PEOPLE v. BARLOW.

1. PAUPERS—RESIDENCE—INCOMPETENT PERSONS.

An incompetent person living with her foster parents for many years, from her childhood and until their death, acquires a residence at the place of their domicile, which she does not lose by working for a person in another county under a contract of employment made by her guardian.

2. CRIMINAL LAW—TAKING CASE FROM JURY—RESPONDENT'S TESTIMONY.

A criminal case will not be reversed for refusal to take the case from the jury at the close of the people's testimony on the ground that the proofs did not show a *prima facie* case, if the testimony subsequently introduced by respondent supplied the omission in the people's testimony.

3. SAME—REMOVAL OF PAUPER—SUPERINTENDENTS OF POOR.
    It is no defense to a prosecution against the keeper of a county
    house for the illegal removal of a pauper to another county,
    that such removal was in obedience to the order of the
    superintendents of the poor.

Exceptions before judgment from Lenawee; Chester, J. Submitted June 12, 1903. (Docket No. 147.) Decided September 15, 1903.

John Barlow was convicted of illegally bringing a pauper into a county other than that in which she had a residence. Affirmed.

*Forrest C. Badgley* and *Charles H. Smith*, for appellant.

*Theodore M. Joslin*, Prosecuting Attorney (*J. N. Sampson*, of counsel), for the people.

HOOKER, C. J. Section 4514 of the Compiled Laws provides:

"Any person who shall send, carry, transport, remove, or bring, or who shall cause or procure to be sent, carried, transported, removed, or brought, any poor or indigent person from any township, village, city, or county into any other township, village, city, or county, or from any other State or country into any county in this State, without legal authority, and there leave such poor person, or who shall entice such poor person so to remove, with the intent to make such county to which the removal shall be made chargeable with the support of such pauper, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be imprisoned in the county jail not exceeding three months, or fined not exceeding one hundred dollars, or both such fine and imprisonment, in the discretion of the court."

The appellant was keeper of the county house in Jackson county, and was convicted, under the statute quoted, upon a charge of having taken, sent, or removed one Harriet Marsha, a poor and indigent person, from Jackson

county, Mich., into the township of Woodstock, Lenawee county, without legal authority, and of having left her with the intent to make the said township chargeable with her support. The respondent was first tried and convicted before a justice of the peace in Lenawee county, and afterwards in the circuit court for said county. Upon the last trial the prosecuting attorney introduced evidence tending to show that Harriet Marsha was taken by a family named Ambler, then residing in Lenawee county (with whom she soon after removed to Jackson county), when she was a young girl, about 10 years old, from the county house, or from persons who brought her into the county, as an indigent child. That was 40 or 50 years ago. She lived with the Amblers for many years, and until they died. She was left $75 by the will of Mrs. Ambler, and one Fish was appointed her guardian by the probate court for Jackson county. She afterwards lived with Fish until 1899 or thereabouts, when John Hull came to procure her services as help in his family. He made a bargain with reference thereto with her guardian, and she lived at his house in Woodstock, Lenawee county, upwards of two years, when she was returned to Fish, where she remained until her money was exhausted, when, upon the order of the supervisor, she was sent to the poorhouse in Jackson county. The officers of the poor learned that she had lived with Hull in Lenawee county, and, doubtless, of her earlier residence there. The subject was brought to the attention of the board of superintendents of the poor of Jackson county, which directed the chairman to go to Woodstock and investigate the matter, which he did, and made a report, whereupon the board determined to and did instruct Mr. Barlow, the defendant, to return the woman to Mr. Hull or the supervisor. This was upon the claim that she was a charge upon Lenawee, and not upon Jackson, county. The defendant claimed that he did not know that Mr. Hull lived in Lenawee county, and it is urged that this fact, and the fact that he acted under orders of the superintendents of the poor, constituted a defense,

for the reason that it indicates legal authority and absence of unlawful intent. It is not disputed that he learned before he left Hull's, if he did not know before, that Hull lived in Lenawee county. The court left the question of her residence to the jury; also the question of defendant's intent and authority.

Defendant's counsel contends:

1. That the judgment should be reversed for the reason that, when the people rested, a *prima facie* case had not been made out.

2. That, under the law, Miss Marsha was a resident of Woodstock.

3. That Lenawee county was the domicile of origin of Miss Marsha; that she was always *non compos mentis,* and the burden could not be shifted to Jackson without showing that she removed with her legal parents.

4. That, at all events, she was a nonresident of Jackson county, and a resident of Woodstock, with the consent of her guardian.

5. If she was a resident of Woodstock, it was the duty of the superintendents of the poor of Jackson county to send her there. This they did, through Mr. Barlow, who acted under legal authority,—*i. e.,* instructions from his superiors,—without intent to violate the law.

In our opinion, there was a *prima facie* case made out by the people. Defendant did not rest upon his motion, however, but offered testimony which tended to strengthen the people's case in some respects. In such a case the determination of this question involves all proof. The undisputed testimony would have justified an instruction that Miss Marsha was a charge upon Jackson county. While possibly an incompetent, the testimony indicates that she lived with foster parents from childhood until their death. They made some provision for her by will, and she remained at the place of their domicile. Under the circumstances, the jury could not do otherwise than find, and the court might have instructed them, that she acquired a residence in Jackson with them, and did not lose it through her employment by Mr. Hull.

We are not aware that any law of this State requires

the keeper of a county house to obey the order of the superintendents of the poor to transport inmates of his house to another county, and, if he does so, he is equally liable with them, if he transgresses the law. The subjects of his authority and his good faith were left to the jury, which found against him. We think it unnecessary to refer at length to other alleged errors. None of them could well have injured the defendant in the view we have taken of the case.

The conviction is affirmed.

The other Justices concurred.