PEOPLE *v.* ABERNATHY.

1. CRIMINAL LAW—SUFFICIENCY OF EVIDENCE.
   Question of sufficiency of evidence is for jury unless there is no evidence at all on material point.

2. HOMICIDE—CIRCUMSTANTIAL EVIDENCE.
   In prosecution for murder, even where evidence is all circumstantial, if it is such as tends to show guilt of defendant, it should be submitted to jury.

3. SAME.
> In prosecution for murder, evidence was sufficient to justify submitting case to jury, although it was circumstantial.

Error to Cheboygan; Sprague (Victor D.), J. Submitted January 15, 1931. (Docket No. 145, Calendar No. 34,998.) Decided February 27, 1931.

Charles Abernathy was convicted of murder in the first degree. Affirmed.

*Henry E. Naegely* and *Lisle Shannahan,* for appellant.

*Paul W. Voorhies,* Attorney General, and *Ward I. Waller,* Prosecuting Attorney, for the people.

BUTZEL, C. J. Charles Abernathy, defendant, was found guilty of murder in the first degree, and sentenced to the State's prison for life. He and John Koch, the murdered man, lived in Cheboygan, Michigan. They had been friends for years. Both worked along the water front and as a side occupation were engaged together in the manufacture and sale of moonshine whisky. They lived in the same block, there being an alley between their homes. Their families associated together, and after the death of defendant's wife, the relation between defendant and Koch's wife became very intimate. In January, 1929, Koch and defendant had a serious quarrel at the latter's home. The police were called in and Koch was locked up for the time being in order to avoid serious trouble.

Defendant kept meeting Mrs. Koch clandestinely for immoral purposes, and on the 26th day of September, 1929, they met at a place of assignation, at which time, according to her testimony, Mrs. Koch

told defendant that their relations would have to terminate; that it was the last time she would meet him; that trouble with her husband was threatened and that she was being talked about; that it might result in her children being taken away from her and that she and her husband and family were shortly moving to Wisconsin; that defendant could not stop her from going, and that they were leaving as soon as the job on which Koch was working was completed. The testimony of Mrs. Koch further shows that defendant thereupon told her that if she did go, she would be sorry; that Mrs. Koch told him that he could not stop her as she was Koch's wife, and that defendant thereupon said: "I'll show you." Defendant denied that this conversation took place.

Defendant for 17 years had worked at the Olds dock. On September 27, 1929, the morning following this alleged conversation, he went to work shortly before 7:00 a. m. A few minutes later Koch reached the Olds dock on his way to work. A loud shot was heard, but no one saw it fired. The testimony shows that Koch was shot from an elevation as he was passing along a covered coal shed of the Olds dock. One of the witnesses for the people, Edward Davis, had been walking ahead of Koch. At the sound of the shot, followed by a loud shout, he turned around and saw Koch running toward him holding his hand to his right breast. Koch said to the witness: "Ted, help me. Charley shot me. I am going to die." He immediately became unconscious. Davis laid him down and started towards the waterworks to phone for a doctor. On his way he met two other acquaintances who were driving a truck; they hurried to where Koch was lying and took him immediately to a doctor's office, where he died.

A load of shot from a shotgun shell had entered his body and punctured the heart. The doctor testified that the shot must have been fired from a distance of from 30 to 40 feet and from an elevation of 10 to 14 feet. Koch's lunch box was found near where it is supposed he was shot. Nearby wads from a Peters 12-gauge shotgun shell were also found. They were picked up shortly after the murder occurred and found to be dry, although the testimony shows that everything on the ground was damp, owing to the heavy dew early in the morning at that time of the year. It was shown that defendant's son owned and kept at defendant's home a shotgun which a Peters 12-gauge shell would fit. It was not seen after the murder and no explanation given for its disappearance. Peters 12-gauge shotgun shells were found in defendant's home shortly after the murder.

It was the theory of the prosecution that defendant, upon arriving at his place of work after attending to his immediate duties, went to the west compartment of the coal shed and climbed on top of the high coal pile inside the shed. This would account for the elevation from which the shot was fired. Near the top of the wall of the coal shed there was an opening which had been boarded up and which defendant was familiar with. The boards were placed perpendicularly. One board located at the north side of this opening was not secure. It was nailed at the top but loose at the bottom so that it could be swung in. This board was about 6 inches wide, so that its removal would leave a 6-inch opening. Immediately outside the opening, however, was a coal chute which obstructed the view straight in front of the opening, but not to the side of it. It would have been possible for one to aim at the spot

some 25 feet away where it is supposed Koch was shot. The range of vision in that direction is exceedingly small, however, being about an inch and a half wide, and it is very doubtful whether a person from the outside could identify anyone looking through the opening. There is no testimony that Koch saw defendant except what may be inferred from Koch's dying declaration. In order to reach the compartment from which the shot evidently was fired, it would be necessary for defendant to enter from the outside, as there were no doors between the compartments. If the prosecution's theory is correct, Koch might have seen defendant outside of the building just prior to the murder.

Defendant testified that his duties were such that he was kept busy from the time he came to work until after the murder. There is testimony, however, showing that there was ample time in which he could have committed the crime and returned to his work. A fellow-workman testified that he met defendant about seven o'clock at the office, that they walked together to the tool shed where defendant unlocked the door; that the latter then left to attend to other duties; that it was 10 or 15 minutes later when the witness heard a loud shot, and that it was some ten minutes still later before defendant returned. Defendant testified that he was busy with other duties all this time.

The sole assignment of error claimed in the case is that the court erred in ruling that the evidence relied upon was sufficient to submit the case to the jury. The question of the sufficiency of the evidence is one for the jury unless there is no evidence at all upon a material point. *People* v. *Eaton,* 59 Mich. 559. See, also, *People* v. *Lay,* 193 Mich. 17 (L. R. A. 1917B, 608). Even where evidence is all circum-

stantial, if it is such as tends to show the guilt of the defendant, it should be submitted to a jury. *Miller* v. *Commonwealth,* 182 Ky. 438 (206 S. W. 630); *State* v. *Rush,* 129 S. C. 43 (123 S. E. 765); *United States* v. *Green,* 220 Fed. 973; *Copeland* v. *State,* 23 Ala. App. 91 (121 South. 445).

In the instant case there was absolute proof that Koch was murdered near where defendant was working. There is proof of the *corpus delicti,* and the dying declaration of the murdered man, a motive, and so many other circumstances that it became proper for the trial judge to submit the case to the jury.

The judgment of conviction is affirmed.

WIEST, CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.