PEOPLE v DeCLERK

Docket No. 56938. Argued April 5, 1976 (Calendar No. 10).—Decided
   May 2, 1977.

   Arthur DeClerk, the manager of the meat department in a
   Wrigley's Supermarket, was convicted of violating the Weights
   and Measures Act by the Recorder's Court of Detroit, Justin C.
   Ravitz, J. The only prosecution witness, a food inspector for the
   Department of Agriculture, testified that he did not see the
   defendant weigh, wrap or display the prepackaged meat in the
   store which was found to be short in weight, that although he
   recognized the defendant as the department manager he was
   not familiar with his job responsibilities, and that the defend-
   ant assisted the inspector in reweighing the packages. After the
   court denied a motion for dismissal of the charge, the defend-
   ant presented testimony that another employee had improperly
   marked the meat and that the defendant had not checked the
   weight of the meat on the day of the inspection. The Court of
   Appeals, Quinn, P. J., and Bashara and R. M. Maher, JJ.,
   reversed (Docket No. 19266). The people appeal. *Held:*

   1. An appellate court tests the correctness of a denial of a
   motion to dismiss made at the close of the prosecution's proofs
   by taking the evidence presented by the prosecution in the
   light most favorable to the prosecution, considering only the
   record as it existed when the motion was made. This rule most
   effectively promotes the fundamental requirement of our sys-
   tem of criminal justice that the prosecution must establish a
   prima facie case by its own evidence before the defendant is
   put to his defense. To require a defendant to elect between
   resting on his motion to dismiss at the close of the prosecu-
   tion's proofs and presenting his defense in the event the motion
   is denied compels him to surrender one constitutional right in

REFERENCES FOR POINTS IN HEADNOTES
[1, 9] 29 Am Jur 2d, Evidence § 148.
[2] 75 Am Jur 2d, Trial § 549.
[3] 24 Am Jur 2d, Dismissal, Discontinuance, and Nonsuit § 6.
[4] 79 Am Jur 2d, Weights and Measures § 42.
[5, 7, 10, 11] 79 Am Jur 2d, Weights and Measures § 47.
[6] 79 Am Jur 2d, Weights and Measures § 45.
[8] 29 Am Jur 2d, Evidence § 335.

order to assert another, a situation which the United States Supreme Court has called "intolerable".

2. The Weights and Measures Act by its terms provides penalties for offering or exposing for sale items which are less in quantity than represented. It imposes both direct liability on the actor and vicarious liability on the principal. The element of *actus reus* in a prosecution under the Weights and Measures Act may be established by a showing of a failure to act by one with the responsibility, and power commensurate with that responsibility, to devise whatever measures are necessary to insure compliance with the statute.

3. The Weights and Measures Act also imposes criminal liability upon a principal for the acts of his servant or agent; however, no guilt predicated on vicarious liability was established in the prosecution's case-in-chief because it was not proved that the employee who packaged and weighed the short-weight packages was the servant or agent of the defendant. The testimony presented by the prosecution, taken in the light most favorable to the prosecution, does not establish the duties, responsibilities, or authority of the defendant, and contains no facts from which it might be reasonably inferred that the defendant had the responsibility and power to avoid or correct violations of the statute. Since the prosecutor produced no evidence in his case-in-chief of an element of the crime charged, that the defendant "performed" one of the acts prohibited by the statute, the trial court erroneously denied the defendant's motion to dismiss.

Justice Williams concurred in affirmance. He wrote that:

The Weights and Measures Act imposes criminal liability on any person who, by himself or by his servant or agent, or as the servant or agent of another person, performs any of the enumerated prohibited acts, including exposing for sale short-weight meat. The defendant is not liable under the statute "solely on the basis of his authority and responsibility" because the statute limits liability by its terms and should not be construed to expand liability. The prosecution did not show that the defendant performed a prohibited act for himself or as an agent of another, or that the employee who wrapped and weighed the meat was acting as defendant's servant or agent. The prosecution did not show any evidence as to an element of the offense; therefore the denial of the motion to dismiss was error.

58 Mich App 528; 228 NW2d 447 (1975) affirmed.

134 Mich 394; 96 NW 482 (1903) overruled.

OPINION OF THE COURT

1. CRIMINAL LAW—BURDEN OF PROOF—CASE IN CHIEF—ELEMENTS OF
   CRIME.

   The prosecutor has the burden of producing in his case in chief
   some evidence as to each element of the crime charged to
   warrant putting the defendant to his defense.

2. CRIMINAL LAW—TRIAL—DIRECTED VERDICT OF ACQUITTAL.

   An appellate court tests the correctness of the denial of a motion
   made at the close of the prosecution's proofs for directed
   verdict of acquittal by taking the evidence presented by the
   prosecution in the light most favorable to the prosecution,
   considering only the record as it existed when the motion was
   made.

3. CRIMINAL LAW—MOTION TO DISMISS—CONSTITUTIONAL RIGHTS.

   To require a defendant to elect between resting on his motion to
   dismiss at the close of the prosecution's proofs and presenting
   his defense in the event the motion is denied compels him to
   surrender one constitutional right in order to assert another.

4. WEIGHTS AND MEASURES—CRIMINAL LAW—VICARIOUS LIABILITY—
   STATUTES.

   The Weights and Measures Act, by its terms, provides penalties
   for offering or exposing for sale items which are less in quan-
   tity than represented; therefore, the fact that the record in a
   prosecution under the statute fails to reveal any evidence that
   the defendant, a master butcher, or his servant or agent was
   the one who actually weighed the short-weight meat packages
   displayed in a supermarket does not, by itself, preclude convic-
   tion (MCL 290.631; MSA 12.1081[31]).

5. WEIGHTS AND MEASURES—CRIMINAL LAW—VICARIOUS LIABILITY.

   The Weights and Measures Act, by its terms, imposes criminal
   liability upon a principal for the acts of his servant or agent;
   however, no guilt predicated on vicarious liability is established
   where it was not proved in the prosecution's case in chief that
   an employee of a supermarket who packaged and weighed meat
   was the servant or agent of a defendant who was the master
   butcher in the store (MCL 290.631; MSA 12.1081[31]).

6. WEIGHTS AND MEASURES—CRIMINAL LAW—FAILURE TO ACT—STRICT
   LIABILITY—VICARIOUS LIABILITY.

   The element of *actus reus* in a prosecution under the Weights
   and Measures Act may be established by a showing of a failure
   to act by one with the responsibility, and power commensurate

with that responsibility, to devise whatever measures are necessary to insure compliance with the statute (MCL 290.631; MSA 12.1081[31]).

7. WEIGHTS AND MEASURES—CRIMINAL LAW—VICARIOUS LIABILITY—MOTION TO DISMISS.

A trial court erroneously denied a defendant's motion to dismiss made at the close of the prosecution's case in a trial for violation of the Weights and Measures Act where the prosecution's case consisted of one witness, a food inspector, who testified that the defendant's picture was displayed with the legend "meat manager" or "master butcher" in a supermarket meat department and that the defendant assisted the inspector in reweighing the packages of meat, where there was no evidence introduced by the prosecution of the defendant's duties, responsibilities, or authority in the conduct of the business or of his responsibility or power to avoid or correct violations of the statute (MCL 290.631; MSA 12.1081[31]).

CONCURRING OPINION

WILLIAMS, J.

8. CRIMINAL LAW—ACQUITTAL—DIRECTED VERDICT.

*It is reversible error, as a general rule, for a trial judge to refuse a directed verdict of acquittal on any charge where the prosecution has failed to present evidence from which the jury could find all elements of the crime charged.*

9. CRIMINAL LAW—ACQUITTAL—DIRECTED VERDICT.

*The correctness of the denial of a motion made at the close of the prosecution's proofs for directed verdict of acquittal is tested by taking the evidence presented by the prosecution in the light most favorable to the prosecution, considering only the record as it existed when the motion was made.*

10. WEIGHTS AND MEASURES—CRIMINAL LAW—ELEMENTS OF CRIME.

*Any person who, by himself, or by his servant or agent, or as the servant or agent of another person, sells, or offers or exposes for sale short-weight meat violates the Weights and Measures Act (MCL 290.631; MSA 12.1081[31]).*

11. WEIGHTS AND MEASURES—CRIMINAL LAW—VICARIOUS LIABILITY—MOTION TO DISMISS.

*Denial of a defendant's motion to dismiss made at the close of the prosecution's case was error in a trial for violation of the Weights and Measures Act where the prosecution's case con-*

*sisted of one witness, a food inspector, who testified that the defendant's picture was displayed with the legend "meat manager" or "master butcher" in a supermarket meat department and that the defendant assisted the inspector in reweighing the packages of meat, and there was no evidence introduced by the prosecution that the defendant had weighed the meat himself, or that an employee of the supermarket who packaged and weighed meat was the servant or agent of the defendant (MCL 290.631; MSA 12.1081[31]).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training & Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

*Honigman, Miller, Schwartz & Cohn (Jason L. Honigman* and *John M. Kamins,* of counsel) for defendant.

RYAN, J. The defendant, Arthur DeClerk, was convicted in the Recorder's Court for the City of Detroit of a violation of § 31(e) of the Weights and Measures Act of 1964, MCLA 290.631(e); MSA 12.1081(31)(e).

The specific portion of the act under which he was charged and convicted by the court sitting without a jury provides:

"Any person who, by himself or by his servant or agent, or as the servant or agent of another person, performs any of the acts enumerated in this section shall be guilty of a misdemeanor.

\* \* \*

"(e) Sell, or offer or expose for sale, less than the quantity he represents of any commodity, thing or service."

The Court of Appeals reversed the conviction. 58 Mich App 528; 228 NW2d 447 (1975). We affirm.

## I

### A. *The Prosecution's Case*

Mr. Ronald R. Reedy, an employee of the Michigan Department of Agriculture, Food Inspection Division testified that he entered a Wrigley Supermarket located in the City of Detroit on August 9, 1973 where he checked 40 packages in the refrigerated self-service counter in the meat department and found that 33 weighed less than the amount printed thereon. He said the defendant's picture bearing the legend "meat manager" or "master butcher", he was not sure which, was posted behind the meat counter. He testified the defendant greeted him and assisted in weighing the packages. Mr. Reedy stated that he did not know the responsibilities of a meat manager, and that he did not know anything about the assignment of responsibility within the Wrigley Supermarket chain.

Both DeClerk and Wrigley were charged with violating the statute. The corporate defendant pleaded guilty; DeClerk pleaded not guilty.

The prosecutor's proofs consisted solely of the testimony of Mr. Reedy.

At the conclusion of Mr. Reedy's testimony the prosecutor rested, whereupon the defendant moved the trial court to dismiss the charge against him because the prosecutor failed to prove a prima facie case under the statute. The defendant argued that proof that defendant possessed the title "meat manager", without some description of his responsibilities, was an insufficient factual basis from which to infer that he was guilty of violating the statute.

The court denied the motion.

## B. *The Defendant's Case*

The defendant then testified in his own behalf that he was the head of the supermarket's meat department and that his title was "master butcher". He testified further that he did not personally wrap, weigh or price any of the tested packages, but that this duty was the responsibility of another store employee, Mrs. Wrona. He stated that his duties included cutting meat, instructing new personnel about the operation of the automatic packaging and weighing machines, and spot-checking the wrapped packages for accuracy, when he had time. He also stated that he had not spot-checked Mrs. Wrona's work on the day in question because he was short of help. The defendant testified that he did not hire any of the store employees, that he was Mrs. Wrona's immediate superior, and that after discovering the short-weight packages he watched Mrs. Wrona reweigh and package all of the meat on display.

Mrs. Wrona also testified for the defense. She stated that the short-weight packages were the result of her failure to properly adjust the automatic pricing machinery. She testified that she was preoccupied with personal problems and neglected to make correct adjustments, but that no one had instructed her to short-weigh the meat.

The trial court found the defendant guilty as charged and sentenced him to serve one day in jail. In a written opinion the court denied defendant DeClerk's motion for a new trial. The Court of Appeals reversed, holding that the trial judge improperly denied "a directed verdict in defendant's favor" on motion made after the prosecutor rested. 58 Mich App 528, 532.

We confine our review to two rather narrow issues:

(1) What evidence may an appellate court consider in reviewing a trial court's denial of a non-jury trial motion to dismiss the charge made at the close of the prosecution's case; and

(2) What evidence is necessary to establish a violation of § 31(e) of the Weights and Measures Act of 1964, MCLA 290.631; MSA 12.1081(31).

## II

At the close of the prosecution's case, the defendant moved the court to dismiss the charge against him. Such a motion is in the nature of a jury trial motion for a directed verdict and in both jury and nonjury trials is governed by the rule that the prosecutor has the burden of producing in his case in chief some evidence as to each element of the crime charged to warrant putting the defendant to his defense. *People v Vail,* 393 Mich 460; 227 NW2d 535 (1975); *People v Abernathy,* 253 Mich 583; 235 NW 261 (1931).[1]

In the case at bar, the trial court apparently found that the prosecutor had presented a prima facie case against defendant under the statute because it ruled: "In other words, I think there is sufficient facts for it to go to the jury, and it is a question of the weight of the evidence. And for that reason I am overruling the motion, or denying the motion for a directed verdict."

The Court of Appeals disagreed, and confined its review of the trial court's denial of the motion to the prosecutor's proofs, declining to follow this

---

[1] In civil cases a motion to dismiss made when the plaintiff rests is controlled by GCR 1963, 504.2, which may apply to criminal cases through GCR 1963, 785.1. In this case we need not decide the applicability of GCR 1963, 504.2 to criminal proceedings.

Court's holding in *People v Barlow,* 134 Mich 394, 397; 96 NW 482 (1903), that "[i]n such a case the determination of this question involves all proof".

We have recently held in *People v Garcia,* 398 Mich 250, 256; 247 NW2d 547 (1976), that "[a]n appellate court tests the correctness of the denial of [a motion for directed verdict of acquittal made at the close of the prosecution's proofs] by taking the evidence *presented by the prosecution* in the light most favorable to the prosecution * * * ". (Emphasis by the Court.) We agree with the Court of Appeals that the "better rule" in criminal cases is that "in reviewing the denial of such a motion, the appellate court should consider only the record as it existed when the motion was made".[2] *State v Rocker,* 52 Hawaii 336, 348; 475 P2d 684, 691 (1970) (Levinson, J., dissenting). See also *United States v Rizzo,* 416 F2d 734 (CA 7, 1969); *Cephus v United States,* 117 US App DC 15; 324 F2d 893 (1963). Confining the scope of our review in this fashion most effectively promotes the fundamental requirement of our criminal justice system that "the prosecution must establish a prima facie case by its own evidence before the defendant may be put to his defense". *Cephus v United States, supra,* 17. To require the defendant to elect between resting on his motion to dismiss and presenting his defense in the event the motion is denied compels him to surrender one constitutional right in order to assert another,[3] a situation the United States

---

[2] This motion must be distinguished from a post-trial challenge to the adequacy of the record to support the conviction, in which review of the entire record is appropriate. *See Thompson v Louisville,* 362 US 199; 80 S Ct 624; 4 L Ed 2d 654 (1960).

[3] Regarding this so-called waiver rule, Professor Moore states:

"Denial places defendant in the dilemma of resting without offering any evidence, thus risking a conviction, or putting in evidence which might result in filling the gaps in the government's case. For, in determining the sufficiency of the evidence * * * on appeal, the * * *

Supreme Court has called "intolerable". *Simmons v United States,* 390 US 377, 394; 88 S Ct 967; 19 L Ed 2d 1247 (1968).

We, therefore, overrule *People v Barlow, supra,* and hold that in reviewing a motion to dismiss for failure to present a prima facie case made at the close of the prosecution's proofs, an appellate court should look only to the evidence theretofore introduced by the prosecutor.

## III

We next consider the elements of a prima facie case under MCLA 290.631; MSA 12.1081(31).

The portion of the statute under which defendant was charged and convicted reads:

"Any person who, by himself or by his servant or agent, or as the servant or agent of another person, performs any of the acts enumerated in this section shall be guilty of a misdemeanor.

* * *

"(e) Sell, or offer or expose for sale, less than the quantity he represents of any commodity, thing or service."

The Court of Appeals held that the defendant could be convicted "for selling or offering or exposing for sale short-weight meat if (1) he (defendant) did it by himself, or (2) if it was done by his (defendant's) servant or agent, or (3) if the act was done by him (defendant) as an agent or servant of

appellate court * * * looks to the entire record and not simply to the evidence offered by the government on its direct case. This means that a conviction may be sustained despite the fact that as of a certain stage of trial—viz., the close of the government's case—defendant was entitled to an acquittal. Putting in a defense which brings about this result is verbalized as a 'waiver' by defendant of his right to review denial of his motion for acquittal." 8A Moore Federal Practice (2d ed), ¶ 29.05.

a principal". That Court reversed the conviction because "there was no evidence that the defendant did the short weighing himself, nor that it was done by his servant or agent".

The prosecutor contends that the Court of Appeals misconstrued the statute by finding, in effect, · that the act of short weighing the commodity is the prohibited activity. We agree.

By its terms, the statute provides penalties for offering or exposing for sale items which are less in quantity than represented. Therefore, the fact that the record fails to reveal any evidence that the defendant (or anyone else) was the one who actually weighed the meat does not, by itself, preclude conviction.

A relevant question in this case is whether the statute creates "vicarious liability".[4] The issue may be stated thus: does the statute in question dispense with the requirement that the prosecution prove an *actus reus* by the defendant and, if so, is this defendant one of the persons enumerated therein to whom vicarious liability can attach? By its terms, the statute imposes liability upon a principal for the acts of his servant or agent. However, it was not proved in the prosecu-

---

[4] A statute can create both strict and vicarious liability. It is important to distinguish between the two:

"The distinction between strict and vicarious responsibility has never been properly explained by the judges. * * * The full difference is this: strict responsibility does not dispense with something like a personal actus reus, whereas vicarious responsibility does. Conversely, strict responsibility dispenses with the need for mens rea altogether, whereas vicarious responsibility does not dispense with the need for mens rea on the part of the servant. The same statute may, of course, create both strict and vicarious responsibility. In that event, since the responsibility is strict, there will be no need to prove mens rea on the part of anyone; and since the responsibility is vicarious, there will be no need to prove an actus reus on the part of the accused master. It may be hoped that such a tyrannous combination will be found to be rare." Williams, Criminal Law: The General Part, pp 285–286.

tion's case in chief that the employee who packaged and weighed the meat was the "servant" or "agent" of the defendant. Consequently, no guilt predicated on vicarious liability was established.

However, the prosecutor contends that the defendant is guilty of a violation of the statute because, in his capacity as "master butcher" at the self-serve meat counter of the supermarket, he suffered the short-weight meat to be put on display and, therefore, himself offered it for sale. A violation of the statute is proved, the prosecutor contends, if it is established that the commodity, thing or service involved is less in quantity than represented, and that the defendant "had a responsible share in the [prohibited] transaction".

In *United States v Dotterweich,* 320 US 277; 64 S Ct 134; 88 L Ed 48 (1943), the United States Supreme Court held that criminal liability for violation of the Federal Food, Drug, and Cosmetic Act,[5] which prohibited "[t]he introduction or delivery for introduction into interstate commerce of any * * * drug * * * that is adulterated or misbranded", could attach to the defendant "solely on the basis of his authority and responsibility as president and general manager of the corporation".[6] In that case, the Court of Appeals, *sub nom United States v Buffalo Pharmacal Co, Inc,* 131 F2d 500 (CA 2, 1942), had attempted to severely limit criminal liability which, under a literal reading of the statute, could have extended to any corporate employee "however remotely entangled in the proscribed shipment [of misbranded

---

[5] 52 Stat 1040; 21 USC §§ 301–392.

[6] 320 US 286 (Murphy, J., dissenting). Justice Murphy noted:

"There is no evidence in this case of any personal guilt on the part of the respondent. There is no proof or claim that he ever knew of the introduction into commerce of the adulterated drugs in question, much less that he actively participated in their introduction."

drugs]".[7] Justice Frankfurter in his opinion for the
Court aptly noted that "[l]iteralism and evisceration are equally to be avoided", and circumscribed
the statutory criminal liability in this fashion:
"[t]he offense is committed * * * by all who * * *
have * * * a responsible share in the furtherance
of the transaction which the statute outlaws
* * * * ". 320 US at 284.

The rule in *Dotterweich* was recently reaffirmed
in *United States v Park,* 421 US 658; 95 S Ct 1903;
44 L Ed 2d 489 (1975), in which the Court sustained the conviction under the Federal Food,
Drug, and Cosmetic Act of the defendant who was
the "chief executive officer" of a retail food chain
corporation. The Court approved the practice of
"holding criminally accountable the persons whose
failure to exercise the authority and supervisory
responsibility reposed in them by the business
organization resulted in the violation complained
of * * * * ". 421 US 671. The Court proffered a
justification for such criminal accountability by
elucidating Justice Frankfurter's phraseology:
"those corporate agents vested with the responsibility, and power commensurate with that responsibility, to devise whatever measures are necessary
to ensure compliance with the Act bear a 'responsible relationship' to, or have a 'responsible share'
in, violations". 421 US 672. The Court further
noted, however, that it is incumbent upon the
government to prove "beyond a reasonable doubt

---

[7] Justice Frankfurter noted that the statute made "any person"
violating § 301(a) guilty of a misdemeanor, and that the statute
further defined "person" to include "corporation". Because a corporation can only act through individuals, the reasoning goes, the corporation's guilt can be imputed to its individual employees because "the
historic conception of 'misdemeanor' makes all those responsible for it
equally guilty, *United States v Mills,* 32 US (7 Pet) 138, 141 [8 L Ed
636 (1833)] * * * ".

MCLA 8.31; MSA 2.212(12) also provides that the term "person"
extends to "bodies politic and corporate, as well as to individuals".

the defendant's guilt, including his power, in the light of the duty imposed by the Act, to prevent or correct the prohibited condition". 421 US 673.

In light of the United States Supreme Court decisions interpreting Federal consumer legislation analogous to MCLA 290.631; MSA 12.1081(31), we conclude that the statute in this case imposes both vicarious and direct liability. First, the statute imposes vicarious liability—that is, it dispenses with the requirement that a personal *actus reus* be proved—only when criminal liability is imposed on a *principal* whose "servant" or "agent" performs any of the prohibited acts. Second, when the corporate "agent" who "performs" the prohibited act is charged with a violation of the statute, direct liability is imposed—that is, the prosecution is required to prove an *actus reus* on the part of that "servant" or "agent". However, the element of *actus reus* may be established by a showing of a *failure to act* by one "with the responsibility, and power commensurate with that responsibility, to devise whatever measures are necessary to ensure compliance with" the statute.

## IV

The question, then, is whether the prosecutor offered any evidence in his case in chief to establish the defendant's "responsibility, and power commensurate with that responsibility" "as the servant or agent of another" to avoid or correct violations of MCLA 290.631(e); MSA 12.1081(31)(e).[8]

---

[8] It is not seriously urged that the defendant was the principal in this case. Consequently, *In re Marley,* 29 Cal 2d 525; 175 P2d 832 (1946); *People v Longwell,* 120 Mich 311; 79 NW 484 (1899); *People v Snowberger,* 113 Mich 86; 71 NW 497 (1897); and *People v Roby,* 52 Mich 577; 18 NW 365 (1884), all of which involve store owners, are inapplicable. In any event, the prosecutor presented no evidence in his case in chief which admits of that possibility.

The prosecution's case consisted of one witness, the food inspector, who testified that displayed behind the meat counter was a picture of the defendant with the legend "meat manager" or "master butcher", and that the defendant assisted the inspector in weighing the packages of meat determined to be short weight.

This testimony alone, taken in the light most favorable to the prosecution, does not establish a sufficient factual predicate from which one may infer all of the elements of the crime. The prosecution's case consisted of no evidence of the duties, responsibilities or authority of a "master butcher" in the business structure. The prosecution's proofs contain no facts from which we might reasonably infer a responsibility and power on the part of the defendant to avoid or correct violations of the statute. Because we must confine our inquiry to the prosecutor's proofs we do not consider the effect of the defendant's case on the existence of the elements of the crime.

Since the prosecutor produced no evidence in his case in chief on one of the elements of the crime charged, to wit: that the defendant "performed" one of the acts prohibited by the statute, we hold that the trial court erroneously denied defendant's motion to dismiss made at the close of the prosecution's case.

The Court of Appeals is affirmed.

KAVANAGH, C. J., and LEVIN, COLEMAN, and FITZGERALD, JJ., concurred with RYAN, J.

WILLIAMS, J. This weights and measures "short-weight" case raises two issues. First, did the Court of Appeals err in only considering the prosecution's evidence in ruling on the propriety of a

motion to dismiss in a nonjury trial, or does Michigan law require in such instances that a court, on review, look to both the prosecution's evidence and evidence later introduced by the defense. Second, did the Court of Appeals correctly state the elements of the statutory offense in issue, or did the Court err by implicitly refusing to adopt the rationale of *United States v Dotterweich,* 320 US 277; 64 S Ct 134; 88 L Ed 48 (1943), imputing direct liability to a person "solely on the basis of his authority and responsibility" within a corporate structure.

We hold that on review of a denial of a motion to dismiss at the end of the prosecution's case in chief, only the prosecution's evidence may be considered. Accordingly, we affirm the Court of Appeals as to this issue.

We further hold that the Weights and Measures Act, in providing that

"Any person who, by himself or by his servant or agent, or as the servant or agent of another person, performs any of the acts enumerated in this section shall be guilty of a misdemeanor.

*     *     *

"(e) Sell, or offer or expose for sale, less than the quantity he represents * * * ",

focuses liability on the person who by himself or herself "performs" the prohibited act and his, her or its employer or principal, if any. Since the prosecution's evidence did not show that defendant DeClerk performed the prohibited acts by himself, by a servant or agent, or as a servant or agent of another, the trial court's denial of the motion to dismiss was improper. Accordingly, we affirm the Court of Appeals and reverse the trial court as to this issue.

## I—Facts

As the trial court stated, "the facts of this case
are simple, undisputed and important". On August
9, 1973, Ronald Reedy, a food inspector for the
Michigan Department of Agriculture, tested 40
packages of meat at a Wrigley supermarket. He
found 33 of the 40 packages to be underweight.

Mr. Reedy then secured a complaint and war-
rant charging defendant DeClerk, individually,
and "Wrigley's Supermarket, Inc.", as criminal
defendants, alleging both defendants violated the
following provision of the Michigan Weights and
Measures Act:

"Any person who, by himself or by his servant or
agent, or as the servant or agent of another person,
performs any of the acts enumerated in this section
shall be guilty of a misdemeanor.

* * *

"(e) Sell, or offer or expose for sale, less than the
quantity he represents of any commodity, thing or
service." MCLA 290.631; MSA 12.1081(31).

Defendant Wrigley's pled guilty and was fined in
accord with the statute. Defendant DeClerk, how-
ever, claimed he was improperly charged under
the statute. His case proceeded to a bench trial.

At trial, the prosecution's sole witness was Mr.
Reedy. The trial court accurately summarized the
substance of his testimony as follows:

"(1) The defendant was present in the meat depart-
ment on August 9, 1973, when the 33 underweight
packages were found to be offered for sale.

"(2) A picture of the defendant was displayed over the
meat counter and it described Mr. DeClerk as the
'meat manager,' or possibly the 'meat butcher'. Mr.
Reedy had been to the store previously and seen the

same picture displayed six or eight months earlier; at
that time too he saw defendant in the meat department
and took him to be the meat manager.

"(3) Mr. Reedy knew Mr. DeClerk by name and the
latter accompanied him to the meat counter and wit-
nessed the inspection and weighing of the meat. It is
customary for the store manager or meat manager to
witness the inspection and in the instant case this
arrangement was effectuated without explanation, ap-
parently because of the prior contact between Reedy
and DeClerk.

"(4) Before leaving the store, Mr. Reedy showed the
report of his investigation to both Mr. DeClerk and the
store manager.

"(5) Mr. Reedy further testified that the store in
question is a large supermarket, open 24 hours a day
and that he did not personally see the meat in question
weighed, wrapped nor put on display. Further, he was
not familiar with the individual responsibilities of the
store or meat or produce managers."

Upon termination of Mr. Reedy's testimony,
defendant moved to dismiss[1] on the grounds that
the prosecution had failed to prove a prima facie
case under the statute. The trial court denied the
motion, stating that "I think there is *[sic]* sufficient
facts for it to go to the jury, and it is a question of
the weight of the evidence. And for that reason I
am overruling the motion * * * ".

Defendant then elected to call two witnesses
after the motion to dismiss was denied. First,
defendant testified in his own behalf. The trial
court accurately summarized the substance of his
testimony as follows:

"(1) He was in fact employed as head of the meat
department of the store in question and the picture

---

[1] A motion to dismiss is, in a nonjurytrial, the equivalent of a jury-
trial motion for a directed verdict. In our discussion they are often
treated interchangeably.

referred to was on display though the caption thereunder read 'master butcher'.

"(2) He did not wrap any of the meat packages in question, though he cut it and placed it on the conveyor where it was weighed, wrapped and thereafter placed on display by Ms. Wrona on August 8, 1973.

"(3) Tare sheets and shrinkage allowances are provided by the company to adjust the represented weights of produce, and these are and were given by him to the wrapper, Ms. Wrona.

"(4) Mr. DeClerk does spot check the work of the wrappers though he did not do so on Wednesday, August 8, because he had 'a skeleton crew' that day. On Wednesdays only three persons are employed in the meat department as opposed to the usual four persons; on Wednesdays, all prices are changed and it is a busy day for wrappers.

"(5) Mr. DeClerk, who has no prior record, has headed the meat department in that store for two years, and while only 40 packages were tested he believed that there were approximately 200 packages on display at the time of the inspection, he believed those not weighed to be inaccurate as well and accordingly he had them all reweighed and rewrapped. Ms. Wrona did this and he watched her do so.

"(6) He did not hire Ms. Wrona, the company did. He showed her how to operate the scales and part of his duties and responsibilities were to show people how to operate the equipment in question.

"(7) Irene Wrona worked under his direction and he was her supervisor."

Second, Mrs. Wrona testified. The substance of her testimony was accurately summarized by the trial court as follows:

"(1) On August 9 she weighed the meat in question, incorrectly, because she forgot to touch the tare weight button. This error was inadvertent and it occurred because it was her last week of work, and she was worried about being laid off and not having enough money to meet some of her needs. She said this was

rough on her and as a consequence she was careless and did not pay enough attention to her work.

"(2) Sometimes her wrapping work was checked and this was usually done by the defendant, the meat manager: ' * * * when he found time enough he would usually run through and see if I had the right tare on. But that Wednesday he didn't have time.' She estimated that on two of the five Wednesdays she performed this work Mr. DeClerk did check her work.

"(3) Mr. DeClerk gave her the sheets from which to take tare and shrinkage adjustments and he was her immediate supervisor."

The trial court found defendant guilty as charged and sentenced him to serve one day in jail. Defendant moved for a new trial. In a written opinion, filed December 11, 1973, the trial court held:

"1. Proof of the meat manager's status and presence at the time of the ongoing offense is a sufficient prima facie case to create a question of fact for the jury or fact-finder and to deny a motion for a directed verdict.

"2. Proofs showing that the error was committed, inadvertently, by an employee under the supervision of the meat manager and that the meat manager did not 'spot check' the employee's work, as sometimes done by him, and ever discover the error because he was working with a skeleton crew and was too busy are sufficient to sustain a verdict of guilty under a statute prohibiting 'any person who, by himself or by his servant or agent, or as the servant or agent of another person' 'sell(s) or offer(s) or expose(s) for sale, less than the quantity he represents of any commodity.' "

Defendant appealed. On February 12, 1975 the Court of Appeals reversed, solely upon the grounds that the trial court improperly denied "a directed verdict in defendant's favor" on the motion made after the prosecutor rested his case. 58 Mich App

528, 532. The prosecution filed a delayed application for leave to appeal. We granted leave on August 14, 1975.

## II—THE ISSUES

This case comes to us on an appeal of a denied motion to dismiss by defendant at the close of the prosecution's case-in-chief.

As a general rule of law, "it is reversible error for a trial judge to refuse a directed verdict of acquittal on any charge where the prosecution has failed to present evidence from which the jury could find all elements of the crime charged". *People v Vail,* 393 Mich 460, 464; 227 NW2d 535 (1975); *People v Abernathy,* 253 Mich 583; 235 NW 261 (1931); *People v Wesley Brown,* 35 Mich App 153; 192 NW2d 281 (1971).

As noted *supra,* the record reveals that at trial, the trial court judge denied defendant's motion to dismiss on the grounds that he believed there were "sufficient facts" for the case "to go to the jury", that "it is a question of the weight of the evidence".

The trial court's rationale for its denial of defendant's motion to dismiss is crucial to the understanding of the substantive issues on appeal. At the bench trial, the court only indicated "it is a question of the weight of the evidence"; the court did not elaborate why it believed the prosecution had presented some evidence as to the "elements of the crime charged". However, in its written opinion, the court held:

"Proof of the meat manager's status and presence at the time of the ongoing offense is a sufficient prima facie case to create a question of fact for the jury or fact-finder and to deny a motion for a directed verdict."

In the body of its opinion, the court argued that:

"If the statute reaches defendant DeClerk, as a meat manager in the supervisory capacity supported circumstantially or directly on the record, then his conviction shall be upheld. *For if this is the case, sufficient facts could be inferred from his presence and status to raise a question of fact supporting the denial of a directed verdict." (Emphasis added.)*

This argument assumes a most essential part of the court's argument, developed subsequently in its opinion. The court held that it was "satisfied that Mr. DeClerk did commit the offense charged 'by himself' ", that "[t]he statute is properly interpreted by saying that Mr. DeClerk in his capacity as meat manager—and sometimes, but not often enough, a 'spot checker'—did himself 'offer and expose for sale' the 33 packages that were underweight". Thus, the court perceived the element of the offense that a person "by himself" "sell, or offer or expose for sale, less than the quantity he represents of any commodity, thing or service" to mean that although defendant personally did not, in fact, *perform* any of the above acts, he "legally" sold, offered, or exposed for sale, etc., by reason of his "presence and status" as meat manager. The court's basis for viewing the statute in this manner was its interpretation of the landmark United States Supreme Court case *United States v Dotterweich,* 320 US 277; 64 S Ct 134; 88 L Ed 48 (1943), which stands for the general proposition that direct liability may be imputed to a person "solely on the basis of his authority and responsibility" (his "presence or status", according to the trial court) within a corporate structure. 320 US 277, 286 (Murphy, J., dissenting). See also discussion part IV, *infra.*

Thus, legally, the basis for the court's denial of defendant's motion to dismiss was based on its judgment that defendant's picture, labelled "meat manager" or "master butcher" and the fact that defendant aided Mr. Reedy in reweighing the underweight packages were adequately factual evidence of defendant's "presence and status" as a person in a position of "authority and responsibility"—an element of the statutory offense the court "interpreted into" the Weights and Measures Act "short-weight" provision.

The Court of Appeals overruled the trial court on its denial of the motion to dismiss. In a carefully written opinion, the Court, in reviewing the trial court's denial of defendant's motion to dismiss, focused first on the elements of the statutory offense, "under the express terms" of the statute, stating:

"[A] defendant may be held responsible for selling or offering or exposing for sale short weight meat if (1) he (defendant) *did it by himself,* or (2) if it was done by his (defendant's) servant or agent, or (3) if the act was done by him (defendant) as an agent or servant of a principal." (Emphasis added.) 58 Mich App 528, 531.

Importantly, the Court did not adopt the trial court's analysis that defendant performed the prohibited acts "by himself" by reason of his "presence or status as meat manager", *i.e.* the court did not adopt the *Dotterweich* approach.

Viewing the elements of the offense in this manner, the court then stated that: "A review of the transcript reveals that there was no evidence that the defendant did the short weighing himself, nor that it was done by his servant or agent" (element 2 of the offense). The Court, in making its conclusion, looked only to the prosecution's proofs

to see whether some proof of the elements of the offense was established. The Court did not choose to look to any of the subsequent testimony of defendant; thus, any testimony reflecting on the possibility that defendant was liable because Mrs. Wrona was defendant's "servant or agent" was irrelevant to its consideration of the propriety of the denial of the motion to dismiss.

From this rather complicated "procedural history" two issues arise. First, was it error for the Court of Appeals to only consider the prosecution's evidence in ruling on the propriety of a motion for a directed verdict (here, a motion to dismiss); or does Michigan law require that a reviewing court look to both the prosecution's evidence and evidence later introduced by the defense. Second, did the Court of Appeals correctly state the proper elements of the statutory offense, or did the court err by implicitly refusing to adopt the rationale of *United States v Dotterweich* imputing direct liability to a person by reason of "his presence or status" within a corporate structure.

### III—ON REVIEW OF A DENIED MOTION TO DISMISS, THE COURT SHALL ONLY CONSIDER EVIDENCE FROM THE PROSECUTOR'S CASE

As to the first issue, we agree with the Court of Appeals that

"We think the better rule is that if the people without the aid of defendant's proofs do not establish some evidence on every element, a directed verdict for acquittal must be granted if requested." 58 Mich App 528, 532.

As we have recently stated in *People v Garcia*, 398 Mich 250, 256; 247 NW2d 547 (1976), a review-

ing court "tests the correctness of the denial" of a motion to dismiss or a motion for directed verdict of acquittal made at the close of the prosecution's case in chief "by taking the evidence *presented by the prosecution* in the light most favorable to the prosecution * * * ". (Emphasis in original.)

This rule appears to be at odds with the court's holding in *People v Barlow,* 134 Mich 394, 397; 96 NW 482 (1903), that "[i]n such a case the determination of this question involves all proof". But, upon examination of *Barlow,* we agree with the Court of Appeals that that case is distinguishable because "the prosecutor had made out a prima facie case. The court simply held that defendant's testimony only strengthened the people's case". 58 Mich App 528, 532. However, to the extent the *Barlow* opinion conflicts with our holding in *Garcia,* it is overruled.

## IV—The Elements of the Statutory Offense

As to the second issue, we believe the Court of Appeals correctly read the statute in issue in ruling that a defendant could be convicted "for selling *or* offering *or* exposing for sale short-weight meat if (1) he (defendant) did it himself, or (2) if it was done by his (defendant's) servant or agent, or (3) if the act was done by him (defendant) as an agent or servant of a principal". However, some elaboration upon the court's analysis is in order.

The Weights and Measures Act provision relating to the facts in this case is quite specific:

"Any person who, by himself or by his servant or agent, or as the servant or agent of another person, performs any of the acts enumerated in this section shall be guilty of a misdemeanor.

* * *

"(e) Sell, or offer or expose for sale, less than the quantity he represents of any commodity, thing or service." MCLA 290.631; MSA 12.1081(31).

The statute is clear and unambiguous as to what the prohibited offense is and as to who is liable. There is no necessity for judicial construction or interpretation.

The prohibited offense is *"performing"* any of the acts enumerated, including to "sell, or offer or expose for sale, less than the quantity he represents of any commodity, thing or service".

The person liable is "[a]ny person, who, by himself or by his servant or agent, or as the servant or agent of another person, performs any of the acts" prohibited.

The facts in this case are clear that Mrs. Wrona weighed, wrapped, marked the meat packaged for sale with the weight and price and exposed it for sale. The weight and price were incorrect because Mrs. Wrona failed to adjust the weighing and pricing machine correctly.

Mrs. Wrona was a person who by herself performed a prohibited act (1 above). But the dispositive issue before us is whether defendant DeClerk, the meat manager, was liable. There is no evidence in the prosecution's case which indicates defendant was a person who by himself performed a prohibited act (1 above). Nor is there any evidence in the prosecution's case indicating he was a person who as a servant or an agent of another performed a prohibited act (3 above).

As to the question of whether defendant De-Clerk was a person who "by his servant or agent" performed a prohibited act, we find again that there is no evidence in the prosecution's case that Mrs. Wrona, who performed the prohibited acts,

was, legally, a servant or agent of defendant De-Clerk.[2]

Therefore, because the prosecution did not show any evidence as to the crucial elements of the statutory offense, the trial court's denial of defendant's motion to dismiss must be overruled.

The people have urged that DeClerk is liable "solely on the basis of his authority and responsibility" under *United States v Dotterweich,* 320 US 277, 286; 64 S Ct 134; 88 L Ed 48 (1943) (dissent, Murphy, J.). As we noted *supra,* this rationale in *Dotterweich* is also the essential basis for the trial court's denial of defendant's motion to dismiss. See discussion, part II, *supra.* However, we believe that *Dotterweich* is in no way apposite. The statute in *Dotterweich* is far broader and substantively different than the Michigan Weights and Measures Act. In addition, the above quoted words from *Dotterweich* are cast in terms of limitation rather than in terms of expansion, as the people urge here.

First and foremost the Michigan Weights and Measures Act is structured in an entirely different manner from the statute in *Dotterweich.* Circuit Judge Swan of the Federal Court of Appeals, Second Circuit, when the *Dotterweich* case was before that Court, described the statute in issue as follows:

"Section 301, 21 USCA 331, prohibits 'the following acts and the causing thereof,' namely, '(a) The introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is

---

[2] Although the issue is not before us because we are deciding the propriety of a denied motion to dismiss only as to defendant DeClerk, in a proper case this Court would consider which persons within a corporate structure *(e.g.* the corporate president, supervisory personnel, or a store manager) might be liable under the statute.

adulterated or misbranded.' Section 333(a) of Title 21
declares that 'any person' who violates any of the
provisions of section 331 shall be guilty of a misde-
meanor and on conviction be subject to imprisonment
or fine or both. The Act defines the term 'person' to
include 'individual, partnership, corporation, and associ-
ation.' * * * While the statutory language seems liter-
ally to include all who have any part in causing deliv-
ery for introduction into interstate commerce, there are
serious objections to so construing it." *United States v
Buffalo Pharmacal Co, Inc,* 131 F2d 500, 502–503 (CA 2,
1942).[3]

The Federal statute is different in structure
from the Michigan statute in that, to use Judge
Swan's words, the Federal "statutory language
seems literally to include all who have any part in
causing delivery for introduction into interstate
commerce", whereas the Michigan statute is spe-
cifically limited, as we have seen, to three categor-
ies "[a]ny person who, by himself or by his servant
or agent, or as the servant or agent of another
person, performs * * * ". In other words, in *Dot-
terweich* the Court was dealing with a statute
which on its face seemingly allowed for the possi-
bility that any person could be swept within the
field of liability, whereas in the case before us, the
Michigan Legislature has clearly and explicitly
defined and limited the field of liability.

The second difference between *Dotterweich* and
the case before us follows inexorably and logically
from the first. The Supreme Court of the United
States in *Dotterweich* wrote to *limit* the sweep of
liability. But the people and the trial court would
have this Court use *Dotterweich* to *expand* the

---

[3] Dotterweich was President of Buffalo Pharmacal Company. "For
some unexplainable reason it [the jury] disagreed as to the corpora-
tion's guilt", 131 F2d 500, 501, and the appeal to the Supreme Court
was in Dotterweich's name alone.

field of liability. We cannot accept this legal *non sequitur.*

The United States Supreme Court in *Dotterweich* wrote:

"To speak with technical accuracy, under § 301 a corporation may commit an offense and all people who aid and abet its commission are equally guilty. * * * The offense is committed * * * by all who do have such a responsible share in the furtherance of the transaction which the statute outlaws * * * .

"It would be too treacherous to define or even to indicate by way of illustration the class of employees which stands in such a responsible relation." 320 US 277, 284, 285.

Subsequently, Chief Justice Burger in *United States v Park,* 421 US 658, 669; 95 S Ct 1903; 44 L Ed 2d 489 (1975), analyzed *Dotterweich* as follows:

"At the same time, however, the Court was aware of the concern which was the motivating factor in the Court of Appeals' decision, that literal enforcement 'might operate too harshly by sweeping within its condemnation any person however remotely entangled in the proscribed shipment.' *Id.,* at 284. A limiting principle, in the form of 'settled doctrines of criminal law' defining those who 'are responsible for the commission of a misdemeanor', was available. In this context, the Court concluded, those doctrines dictated that the offense was committed 'by all who * * * have * * * a responsible share in the furtherance of the transaction which the statute outlaws.' *Ibid.*"

In sum, we do not believe *Dotterweich* can be used to support the expansion of liability in the Weights and Measures Act. *Dotterweich* dealt with a statute that seemed to make everyone liable, whereas the Weights and Measures Act is specifically limited; the United States Supreme Court in

*Dotterweich* was writing to limit liability, whereas the people attempt to use it to expand liability. In short, *Dotterweich* is neither applicable to this case nor authority for the result for which the people argue.

For the above stated reasons, we affirm the Court of Appeals, overruling the trial court's denial of defendant's motion to dismiss.

BLAIR MOODY, JR., J., took no part in the decision of this case.