## THE PEOPLE v. JAMES W. EATON.

*Arson—Threats of respondent to burn the building, made two years before the fire, admissible—Statements made and letter delivered to officer, when competent testimony—Sworn statement of accused on examination, showing contradictory statements, admissible—People may prove its falsity—Averment of ownership, how laid in information—Presumption of death from continued absence.*

1. On the trial of a respondent for arson, testimony tending to show his threats, made some two years before the fire, "that he would burn the barn " is not objectionable as being too remote in point of time and is admissible, as are his *voluntary* statements made to the officer who had him in charge, as to his whereabouts on the night of the fire.

2. A letter, written by the respondent while in jail, stating where he staid the night of the fire, and afterwards *voluntarily* delivered to a constable at his request, was clearly admissible in evidence.

3. The *voluntary* statement of the respondent, taken down by the magistrate on the examination and subscribed and sworn to before said officer, in which he claimed to give his whereabouts on the night of the fire and up to the time of his arrest, being inconsistent with his previous statements on that subject, was admissible in evidence for the purpose of showing that he had made such contradictory statements, and the people were at liberty to show that such statement was false.

4. The owner and occupant of land enlisted in 1861, went to the war and was reported to have died in the army. He left a wife and an only child, who have never seen him alive or heard from him since, a period of over twenty-three years.

    *Held*, that the ownership of the land was properly alleged to be in the wife and daughter in an information for arson, for burning a barn on said land.

5. The sufficiency of the evidence is exclusively for the jury, and it is only where there is no evidence, upon a material point, that the court can take a case from the jury.

Error to Genesee. (Newton, J.) Argued January 27, 1886. Decided February 3, 1886.

Arson. Respondent brings error. Affirmed.

*Long & Gold* and *S. L. Kilbourn*, for respondent.

*Moses Taggart*, Attorney General, for People.

CHAMPLIN, J. Eaton was convicted of arson. The testimony connecting him with the crime was entirely circumstantial. The property burned consisted of a barn, situated upon lands belonging to a divorced wife and her daughter, and occupied by her father. The evidence consisted of showing his animosity to his wife and to her father, and of his threats made previous to the fire, and also of his own contradictory statements, made after his arrest, as to his whereabouts on the night of the fire.

The witness, Ida May White, was permitted to testify to threats made by the respondent some two years before the fire occurred. The objection to this testimony was that it was too remote in point of time. The testimony was admissible. Other witnesses were produced who testified to threats

made at different times, not, as in the case of Mrs. White, that he would burn the barn, but to the effect that he had been ill treated and "routed off" of the place, and that no man should ever prosper on that place.

After he had been arrested, and arraigned before the justice, he was committed to the county jail to await trial, and on his way there he voluntarily stated to the officer who had him in charge that, on the night the barn was burned, he slept at Nesbitt's with a stranger named Millard. The testimony was objected to as incompetent and immaterial. But we think it was both competent and material.

While in jail, awaiting examination, respondent wrote a letter addressed to Mr. John Edwards, East Saginaw, Michigan. This letter the respondent handed to Mr. Parsell to mail; but, instead of mailing the letter, Parsell handed it to the prosecuting attorney, and he directed Parsell to redeliver the letter to respondent, which he did in the presence of Constable Garner, who asked Eaton for the letter, and he gave it to him. In this letter he stated that he staid all night with Nesbitt, the night of the twenty-fifth of July, (the night of the fire), and left for Saginaw the next night, which was Saturday. The letter and envelope were offered and received in evidence, against the objection of respondent's counsel. They were clearly admissible.

At the examination before the justice the respondent voluntarily was sworn, and gave testimony respecting his whereabouts from the evening of the twenty-fifth of July, at 7:45 P. M., until his arrest in East Saginaw on the twenty-seventh, which was inconsistent with his previous statements. He swore that on Friday, the twenty-fifth of July, he took the 7:45 train, at night, on the Flint & Pere Marquette railroad, at Flint, and went north as far as the county line, and there got off and walked north, and walked all night, etc.

His testimony was reduced to writing by the magistrate, and subscribed and sworn to before the justice, who testified that it was read to the respondent before he signed it. This sworn statement was offered in evidence, and was objected to as incompetent and immaterial. There were no error in

59 MICH.—36

receiving it in evidence.   It was a statement of the respond-
ent, made under the sanction of an oath voluntarily taken,
and was admissible for the purpose of showing that he had
made contradictory statements respecting his whereabouts on
the night of the fire.   The point was expressly ruled in
*People v. Arnold*, 43 Mich. 303, and such statements held
admissible, and also that the people were at liberty to show
that such statement was false.

To show the falsity of his statement that he left the cars
at the county line, it was proper for the people to prove by
the conductor and engineer, that the train on which respond-
ent claimed to have ridden did not stop on that occasion at
the county line.

The record of the divorce proceeding between Melissa E.
Eaton and the respondent was properly admitted in evi-
dence.

The sixth assignment of error is not sustained by any
exception.

The only remaining error assigned is the refusal of the
judge to charge, as requested by respondent's counsel, " that
there is not sufficient evidence in the case to warrant the con-
viction of the defendant."   The sufficiency of the evidence
was exclusively for the jury.   It is only where there is no
evidence, upon a material point, that the court can take the
case from the jury.

On the argument it was urged, although no assignment of
error was based thereon, that the conviction was wrong,
because the information charged the property as the property
of Melissa E. Gleason and Ida May White, and it is claimed
that the proof shows that it was the property of Ida May
White.   The proof shows that prior to 1861, the legal title
and possession were in Salem C. Gleason, the husband of
Melissa E. Gleason, and father of Ida May White.   Gleason
enlisted in the army in 1861, and went into the war of the
rebellion, and was reported to have died in the army.   He
has never been seen alive or heard from by his family since.
Ida May was his only child and heir.   The legal title was
therefore cast upon Ida May by descent, subject to Mrs. Glea-

son's dower interest. The description of ownership in the information is therefore correct.

No error appearing in the record, the judgment is affirmed.

The other Justices concurred.