PEOPLE v HAMPTON

Docket No. 59843. Argued December 6, 1978 (Calendar No. 15).—
Decided November 26, 1979. Rehearing denied *post,* 1164.

Wayne Hampton was convicted by a jury in Recorder's Court of
Detroit, George W. Crockett, Jr., J., of second-degree murder.
The chief factual issue in the case was whether Hampton had
aided and abetted a codefendant, who was convicted of first-
degree murder, by pushing the trunk-release button on the
dashboard of the victim's car to permit the codefendant to take
the victim out of the trunk of the car and shoot him as he had
announced he would do. After the jury returned its verdict the
trial court considered defendant Hampton's previous motion for
a directed verdict of acquittal, upon which the court had
reserved its ruling. The trial court set aside the verdict as to
defendant Hampton and granted a new trial for him on the
ground that the testimony on the factual issue was not clear
enough to satisfy the reasonable doubt standard. The Court of

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 21 Am Jur 2d, Criminal Law §§ 220, 226.
    30 Am Jur 2d, Evidence § 170 *et seq.*
[3] 29 Am Jur 2d, Evidence §§ 249, 252 *et seq.*
[4, 6, 7] 30 Am Jur 2d, Evidence § 1170 *et seq.*
[5-7] 75 Am Jur 2d, Trial §§ 469 *et seq.,* 548-558.
[8] 4 Am Jur 2d, Appeal and Error §§ 123, 124, 850-852.
    58 Am Jur 2d, New Trial § 1.
    75 Am Jur 2d, Trial §§ 463, 482.
[9, 17] 58 Am Jur 2d, New Trial §§ 11, 13, 14.
    Propriety, and effect as double jeopardy, of court's grant of new
    trial on own motion in criminal case. 85 ALR2d 486.
[11] 20 Am Jur 2d, Courts § 190.
    46 Am Jur 2d, Judgments § 1 *et seq.*
[12] 5 Am Jur 2d, Appeal and Error § 760.
[13] 4 Am Jur 2d, Appeal and Error § 309.
    5 Am Jur 2d, Appeal and Error § 760.
[14] 58 Am Jur 2d, New Trial §§ 3 *et seq.,* 137 *et seq.*
[15] 58 Am Jur 2d, New Trial § 137 *et seq.*
[16] 21 Am Jur 2d, Criminal Law §§ 166, 211.
[18, 19] 75 Am Jur 2d, Trial §§ 550-552.
[20] 21 Am Jur 2d, Criminal Law § 209.

Appeals, Bronson and M. F. Cavanagh, JJ. (M. J. Kelley, P.J., dissenting), denied the people's application for leave to appeal (Docket No. 77-1170). The Supreme Court granted leave to appeal on the single issue whether the trial court invaded the province of the jury in granting the defendant's motion for "directed verdict". 402 Mich 828 (1977). In opinions by Chief Justice Coleman, joined by Justice Fitzgerald; by Justice Levin, joined by Justice Williams; and by Justice Ryan, joined by Justices Kavanagh and Moody, the Supreme Court *held:*

1. The trial judge did not grant a directed verdict of acquittal, but a new trial; granting a new trial in this case was not an abuse of discretion and the order is affirmed. (Chief Justice Coleman, Justices Fitzgerald, Levin, and Williams.)

2. The trial judge, when ruling on a motion for a directed verdict of acquittal, must consider the evidence presented by the prosecution up to the time the motion is made, viewed in the light most favorable to it, and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. (Chief Justice Coleman, Justices Fitzgerald, Ryan, Kavanagh, and Moody.)

Chief Justice Coleman, joined by Justice Fitzgerald, wrote:

1. The resolution of the issue of the proper standard to be applied in deciding motions for directed verdicts in criminal cases is now controlled by the rationale underlying a recent decision of the Supreme Court of the United States. In determining whether a conviction was based on sufficient evidence, a court must consider not whether there was any evidence to support the conviction but whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt. The Supreme Court of the United States stated that an essential of the due process guaranteed by the Fourteenth Amendment is that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof, defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense. A doctrine establishing so fundamental a substantive constitutional standard must also require that the factfinder will rationally apply that standard to the facts in evidence. Yet a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt; because proof beyond a reasonable doubt is an essential of Fourteenth Amendment due process, such a conviction in a state court cannot constitutionally stand.

2. In rejecting the "any evidence" test, the Supreme Court of

the United States focused on the difference between relevance and sufficiency of the evidence. Under the Michigan Rules of Evidence all relevant evidence is admissible unless otherwise excluded. The standards for admissibility of evidence are designed to permit the introduction of all relevant evidence, not otherwise excluded, on the theory that it is best to have as much useful information as possible in making decisions. The concept of sufficiency, on the other hand, is designed to determine whether all the evidence, considered as a whole, justifies submitting the case to the trier of fact or requires a judgment as a matter of law. In quantitative terms, the fact that a piece of evidence has some tendency to make the existence of a fact more probable, or less probable (i.e., that it is relevant), does not necessarily mean that the evidence would justify a reasonable juror in reasonably concluding the existence of that fact beyond a reasonable doubt (i.e., that it is sufficient).

3. Due process requires that the prosecutor introduce sufficient evidence which could justify a trier of fact in reasonably concluding that the defendant is guilty beyond a reasonable doubt before there can be a conviction of a criminal offense. If sufficient evidence is not introduced, a directed verdict or judgment of acquittal should be entered. Statements in prior cases to the effect that a trial judge should direct a verdict only where there is no evidence on a material element of the offense are specifically disapproved.

4. When ruling on a motion for a directed verdict of acquittal in a criminal case, the court must consider the evidence presented by the prosecution up to the time the motion is made, view that evidence in the light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

5. In this case the trial court did not direct a verdict of acquittal, although that was the motion being argued. The statements in the trial court's order are ambiguous in light of the court's oral explanations; but the order does not represent a conclusion by the trial court that a verdict of acquittal was required as a matter of law, even under the standards announced by the Supreme Court of the United States. Instead, the trial court set aside the verdict and ordered a new trial. The testimony, arguments of counsel, and statements by the trial judge preceding the rulings on the motions clearly indicate that the trial judge did not consider the prosecution's evidence in its best light, considered evidence offered by the defense, and may have permitted an inaccurate view of the

possible punishment to affect his decision. Since the trial judge weighed the evidence presented by both the prosecutor and defendant, his findings and order are more consistent with the ordering of a new trial than with the direction of a verdict of acquittal.

6. The standards governing the grant of a new trial are different from those for a directed verdict. Under the statute, a new trial may be granted if the trial judge finds that the verdict of guilty was not in accordance with the evidence introduced and that an injustice has been done. Whether to grant a motion for a new trial is entrusted to the discretion of the trial court, and that decision will not be disturbed on appeal without a showing of an abuse of discretion.

7. The defendant's appellate brief concludes that the trial judge's findings and order were consistent with the standards governing the ordering of new trials. He requested that the order of the trial judge vacating the defendant's conviction be upheld and a new trial ordered. The defendant has not appealed or requested a review of the trial court's order; therefore, the Court declines to reverse the order of a new trial and order that a directed verdict of acquittal be entered. A review of the record in this case does not show that the trial judge abused his discretion in granting a new trial or that his actions impermissibly invaded the province of the jury.

Justice Levin, joined by Justice Williams, observed that the trial judge's explanatory statements do not change the nature of the order he entered, which as a matter of Michigan law was an order for a new trial. He agreed that the trial judge is authorized, although there is, prima facie, sufficient evidence to present a question for the jury, to grant a new trial, and unless the trial judge's discretion is abused, an order granting a new trial because the judge regards the verdict as contrary to the great weight of the evidence or as not in accord with a just result does not invade the province of the jury. He agreed with the Chief Justice that the trial judge did not in this case abuse his discretion in granting a new trial. However, he could not sign either of the other opinions because there is no need to consider the standard for directing a verdict of acquittal where, as a matter of Michigan procedural law, a verdict was not directed and because, although it appears that the defendant has a substantial double jeopardy claim, that claim is not before the Court. The only issue upon which leave to appeal was granted was whether the trial court erred in granting the defendant's motion for a directed verdict. The Court's misapprehension of the nature of the issue when leave to appeal was

granted does not expand the scope of the grant to an issue not necessarily implicated by the limited grant. It is inappropriate, without briefing or argument, to reach a double jeopardy issue. Similarly, since the defendant did not seek to cross-appeal the implicit denial of his motion for directed verdict and has made no argument that it was error, the Court cannot properly decide whether he is entitled to affirmative relief on the ground that failure to direct a verdict was error. Although as a matter of Michigan procedural law the judge did not direct a verdict, he may have done so as a matter of Federal double jeopardy law. Justice Levin would remand the case for a new trial, without prejudice to the defendant's raising a double jeopardy issue.

Justice Ryan, joined by Justices Kavanagh and Moody, concurring in part, agreed with the standard adopted for ruling upon a motion for a directed verdict in criminal cases, but did not agree that a new trial could be ordered in this case. The conclusion by the Chief Justice that reversal is not required on the facts of this case is based on a finding that the trial judge did not direct a verdict but instead exercised his discretion to order a new trial on the ground that the verdict was against the great weight of the evidence. The trial judge in this case, however, could not properly reach the issue whether a new trial should be ordered unless and until he first resolved the defendant's pending motion for directed verdict, which sought to test the legal sufficiency of the prosecution's proofs to establish a case submissible to the jury. Therefore, it was necessary that, before the trial judge could properly *sua sponte* order a new trial on the ground contended, he must first have resolved the defendant's pending motion for directed verdict *against* the defendant. Thus, while the trial judge's written order purports, in its modified form, to deal only with the matter of a new trial, it has the inescapable effect of working a denial of the defendant's otherwise unresolved motion for directed verdict, and the basic issue that emerges is whether that denial was error.

1. Due process requires that the prosecutor introduce sufficient evidence to justify a trier of fact in reasonably concluding that the defendant is guilty beyond a reasonable doubt before a defendant can be convicted of a criminal offense. If sufficient evidence is not introduced, a directed verdict or judgment of acquittal should be entered. In a case where the prosecution does not introduce sufficient evidence to justify a trier of fact in reasonably concluding that the defendant is guilty beyond a reasonable doubt, the error committed is in the trial court's

failure to grant the defendant's motion for a directed verdict of acquittal, an error which cannot be remedied by ordering a new trial.

2. Certainly a trial court has the discretion to grant a new trial after a verdict of guilty has been returned where the court finds that verdict was against the great weight of the evidence. However, careful examination of the transcript of the colloquies between the court and trial counsel which occurred at the close of the evidence and immediately following the verdict suggests that while the trial court may have been unsure what to label the relief being requested, he clearly understood that the issue presented went to the sufficiency of the evidence to support the verdict. The written order of the court states that the evidence presented was not sufficient to convince a reasonable person beyond a reasonable doubt of the defendant's guilt. The question then is whether it was error for the court, having set aside the verdict for insufficient evidence, to order a new trial.

3. The Supreme Court of the United States has held that the Double Jeopardy Clause of the United States Constitution precludes a second trial where the conviction in the first trial was reversed by the reviewing court solely for lack of sufficient evidence to sustain the verdict, even though the defendant specifically requested a new trial. The Court held in a companion case that the same result would follow upon comparable facts in a state court. There is no justification for reaching a contrary result when a trial judge, rather than a reviewing court, has determined as a matter of law that the prosecution's proofs are insufficient. Having found that the evidence, viewed most favorably toward the prosecution, was legally insufficient to support a finding of guilt beyond a reasonable doubt, the trial court was compelled to enter a judgment of acquittal and was thus precluded from granting the defendant a new trial. In this case, considerations of double jeopardy do not preclude appellate review of the trial court's legal determination after the verdict that the prosecution's evidence was insufficient to support a finding of guilt beyond a reasonable doubt. A reversal of the ruling would not require the defendant to undergo a new trial, but would merely result in the reinstatement of the verdict of guilty.

4. An examination of the record in this case, conducted in conformance with the standard announced by the Supreme Court of the United States, leads to the conclusion that the trial court did not err in finding that the evidence produced by the prosecutor was legally insufficient to support a finding of

guilt beyond a reasonable doubt. However, that portion of the trial court's order granting a new trial should be vacated and a judgment of acquittal should be entered.

Affirmed.

OPINION BY COLEMAN, C.J.

1. CRIMINAL LAW — DUE PROCESS — SUFFICIENCY OF EVIDENCE — REASONABLE DOUBT.

In determining whether a conviction was based on sufficient evidence, a court must consider not whether there was any evidence to support the conviction but whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt (US Const, Am XIV).

2. CRIMINAL LAW — DUE PROCESS — SUFFICIENCY OF EVIDENCE — REASONABLE DOUBT.

An essential element of the due process guaranteed by the Fourteenth Amendment is that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof, which is defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense (US Const, Am XIV).

3. EVIDENCE — ADMISSIBILITY — RELEVANCE.

The standards for admissibility of evidence are designed to permit the introduction of all relevant evidence, not otherwise excluded, on the theory that it is best to have as much useful information as possible in making decisions (MRE 402).

4. EVIDENCE — SUFFICIENCY — QUESTION OF FACT.

The concept of sufficiency of evidence, in contrast to its relevance, is designed to determine whether all the evidence, considered as a whole, justifies submitting the case to the trier of fact or requires a judgment as a matter of law.

5. CRIMINAL LAW — DIRECTED VERDICT — ACQUITTAL — SUFFICIENCY OF EVIDENCE.

The fact that some evidence is introduced to support a conviction does not necessarily mean that the evidence is sufficient to raise a jury issue; statements in prior cases to the effect that a trial judge should direct a verdict of acquittal only where there is no evidence on a material element of the offense are specifically disapproved.

6. CRIMINAL LAW — DUE PROCESS — DIRECTED VERDICT — ACQUITTAL.

Fourteenth Amendment due process requires that the prosecutor

introduce sufficient evidence which could justify a trier of fact in reasonably concluding that a defendant is guilty beyond a reasonable doubt before he can be convicted· of a criminal offense; if sufficient evidence is not introduced a directed verdict or judgment of acquittal should be entered (US Const, Am XIV).

7. CRIMINAL LAW — DIRECTED VERDICT — ACQUITTAL.

When ruling on a motion for a directed verdict of acquittal, a court must consider the evidence which had been presented by the prosecution up to the time the motion is made, view that evidence in the light most favorable to the prosecution, and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

8. CRIMINAL LAW — APPEAL AND ERROR — NEW TRIAL — ACQUITTAL.

A grant or denial of a motion for a new trial is reviewed by a different standard from that for a directed verdict; whether to grant or deny a motion for a new trial is entrusted to the discretion of the trial judge and the decision will not be disturbed on appeal without a showing of abuse of discretion (MCL 770.1; MSA 28.1098).

9. CRIMINAL LAW — NEW TRIAL.

A new trial may be granted by the trial judge under the statute if the trial judge finds that the verdict of guilty is not in accordance with the evidence introduced and that an injustice has been done (MCL 770.1; MSA 28.1098).

10. HOMICIDE — SECOND-DEGREE MURDER — NEW TRIAL — DISCRETION.

Review of the record does not show that the trial judge abused his discretion in granting a new trial or that his actions in setting aside a verdict of guilty of second-degree murder impermissibly invaded the province of the jury where the prosecution's theory of the case was that the defendant had aided and abetted a codefendant, who had robbed and later shot the victim after binding and gagging him in the trunk of a car, the chief factual issue in the case was whether the defendant had pushed the trunk-release button on the dashboard of the car to permit the codefendant to take the victim out of the trunk, and the trial court found that the testimony on the factual issue lacked sufficient "clarity" to support the verdict of guilty beyond a reasonable doubt (MCL 750.317, 770.1; MSA 28.549, 28.1098).

CONCURRING OPINION BY LEVIN, J.

See headnotes 8-10, 15.

11. JUDGMENT — COURTS.

*Courts speak through their judgments and orders, not their oral statements or written opinions.*

12. APPEAL AND ERROR — ISSUES ON APPEAL — DICTUM.

*There is no need to consider in an appeal what the standard is for directing a verdict of acquittal where, as a matter of Michigan procedural law, no verdict was directed.*

13. APPEAL AND ERROR — ISSUES ON APPEAL — GRANT OF LEAVE TO APPEAL.

*Misapprehension by the Supreme Court of one issue in a case when it granted leave to appeal on one issue does not expand the scope of the grant to another issue not necessarily implicated by the limited grant of leave to appeal.*

OPINION CONCURRING IN PART AND DISSENTING IN PART BY RYAN, J.

See headnotes 1-7.

14. CRIMINAL LAW — NEW TRIAL — DIRECTED VERDICT — ACQUITTAL.

*Before a trial judge may properly order a new trial sua sponte on the ground that a verdict of guilty is against the great weight of the evidence, he must first resolve against the defendant a pending motion for a directed verdict of acquittal; in a case where the prosecution does not introduce sufficient evidence which could justify a trier of fact in reasonably concluding that the defendant is guilty beyond a reasonable doubt, the error committed is in the trial court's failure to grant a defendant's motion for a directed verdict of acquittal, an error which cannot be remedied by ordering a new trial (GCR 1963, 527).*

15. CRIMINAL LAW — NEW TRIAL — VERDICT OF GUILTY.

*A trial court has the discretion to grant a new trial after a jury verdict of guilty has been returned where the court finds that the verdict was against the great weight of the evidence (GCR 1963, 527.1[5]).*

16. CRIMINAL LAW — NEW TRIAL — APPEAL AND ERROR — DOUBLE JEOPARDY.

*The Double Jeopardy Clause of the United States Constitution precludes a second trial in a state court where a conviction in the first trial was reversed by the reviewing court solely for*

lack of sufficient evidence to sustain the verdict, even though the defendant specifically requested a new trial (US Const, Am V).

17. CRIMINAL LAW — NEW TRIAL — DOUBLE JEOPARDY.

There is no justification for reaching a result that the Double Jeopardy Clause permits a second trial where a trial judge, rather than a reviewing court, determines as a matter of law that the prosecution's proofs in the first trial are insufficient to support a finding of guilt beyond a reasonable doubt (US Const, Am V; Const 1963, art 1, § 15).

18. CRIMINAL LAW — NEW TRIAL — DOUBLE JEOPARDY — DIRECTED VERDICT — ACQUITTAL.

A trial court which finds that the evidence presented, viewed most favorably toward the prosecution, is legally insufficient to support a finding of guilt beyond a reasonable doubt is compelled to enter a judgment of acquittal and is thus precluded by the Double Jeopardy Clause from granting the defendant a new trial (US Const, Am V; Const 1963, art 1, § 15).

19. HOMICIDE — SECOND-DEGREE MURDER — EVIDENCE — SUFFICIENCY.

A finding that the evidence produced by the prosecution was insufficient to support a verdict of guilty beyond a reasonable doubt of second-degree murder was not error where the prosecution's theory of the case was that the defendant had aided and abetted a codefendant charged with first-degree murder, where the codefendant robbed and later shot the victim after binding and gagging him in the trunk of a car, the chief factual issue in the case was whether the defendant had pushed the trunk-release button on the dashboard of the car to permit the codefendant to take the victim out of the trunk, and the trial court found that the testimony on the factual issue was not sufficient to support the verdict of guilty beyond a reasonable doubt (MCL 750.316, 750.317; MSA 28.548, 28.549).

20. CRIMINAL LAW — DOUBLE JEOPARDY — DIRECTED VERDICT — ACQUITTAL.

Double jeopardy considerations do not preclude appellate review of a trial court's legal determination, after a jury verdict of guilty, that the prosecution's evidence was insufficient to support a finding of guilt beyond a reasonable doubt; a reversal of the ruling would not require the defendant to undergo a new trial, but would merely result in the reinstatement of the jury's verdict of guilty (US Const, Am V; Const 1963, art 1, § 15).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

*LeRoy W. Daggs* for defendant.

Coleman, C.J. Defendant and a codefendant, Lewis Griffin, were charged with two counts of first-degree murder (premeditated and felony murder), MCL 750.316; MSA 28.548, resulting from the fatal shooting of Edgar Coleman, Jr. At their trial, defendant made a motion for a directed verdict of acquittal at the conclusion of the people's case. The motion was denied after the judge said that the prosecution had presented evidence on each element of the offense. The motion was renewed at the close of all the proofs and the trial judge reserved his ruling on this motion until after the jury returned a verdict. After the jury found defendant guilty of second-degree murder on both counts, MCL 750.317; MSA 28.549, the judge ordered that the verdict be set aside and ordered a new trial. The prosecutor sought leave to appeal in the Court of Appeals but leave was denied. The prosecutor applied for leave to appeal in this Court which was granted and limited to the issue of: "Whether, under the circumstances of this case, the trial court invaded the province of the jury when he granted the defendant's motion for directed verdict after the jury had returned a verdict finding the defendant guilty."[1]

I

On appeal, the prosecutor claims that the trial

[1] See *People v Hampton,* 402 Mich 828 (1977).

judge erred in directing a verdict of acquittal. He
claims that the judge erred by employing an im-
proper standard in ruling on the motion, by failing
to view the evidence presented by the prosecution,
and all reasonable inferences therefrom, in a light
most favorable to the prosecution, by considering
evidence presented by the defendant and by allow-
ing an inaccurate view of the possible punishment
to affect his decision.[2] The prosecutor argues that
the standard to be applied in determining whether
a motion for a directed verdict should be granted
is whether there is *any* evidence on each material
element of the offense and that questions of the
sufficiency of the evidence are for the jury unless
there is no evidence at all upon a material point,
see *People v Garcia,* 398 Mich 250; 247 NW2d 547
(1976), *People v Johnson,* 397 Mich 686; 246 NW2d
836 (1976), *People v Abernathy,* 253 Mich 583; 235
NW 261 (1931), *People v Eaton,* 59 Mich 559; 26
NW 702 (1886), *People v Miller,* 78 Mich App 336;
259 NW2d 877 (1977), *People v Maliskey,* 77 Mich
App 444; 258 NW2d 512 (1977). Defendant con-
tends that the proper standard for ruling on a
motion for a directed verdict is whether the evi-
dence is sufficient to justify a reasonable person in
concluding that defendant is guilty beyond a rea-
sonable doubt, see *People v Edgar,* 75 Mich App
467; 255 NW2d 648 (1977), *People v Royal,* 62
Mich App 756; 233 NW2d 860 (1975).

Recognizing that the reported opinions of the
appellate courts of this state contain different and

---

[2] In ruling on defendant's motion the trial judge stated that he did
not think the evidence came "through with as much clarity as I think
the law requires *if you are going to send a man away under a
mandatory sentence of life imprisonment".* However, the jury had
returned a verdict of guilty of murder in the second degree which
does not carry a mandatory life sentence, see MCL 750.317; MSA
28.549.

sometimes conflicting statements of the standards for directed verdicts, we granted leave to appeal in this case to resolve and settle the significant jurisprudential issue of what is the proper standard to be applied in passing on motions for directed verdicts in criminal cases. However, the resolution of this issue is now controlled by the rationale underlying the decision in *Jackson v Virginia,* 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979).

*Jackson* held that a Federal habeas corpus court, in determining whether a state conviction was based on sufficient evidence, must consider not whether there was any evidence to support the conviction but whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt.

In explaining the constitutional considerations underlying the decision in *Jackson* the Court stated:

"In short, *[In re] Winship* [397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970)] presupposes as an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.

\*   \*   \*

"[T]he Federal Courts of Appeals have generally assumed that so long as the reasonable-doubt instruction has been given at trial, the no-evidence doctrine of *Thompson v Louisville* [362 US 199; 80 S Ct 624; 4 L Ed 2d 654 (1960)] remains the appropriate guide for a federal habeas corpus court to apply in assessing a state prisoner's challenge to his conviction as founded upon insufficient evidence. We cannot agree.

"The *Winship* doctrine requires more than simply a trial ritual. A doctrine establishing so fundamental a

substantive constitutional standard must also require that the factfinder will rationally apply that standard to the facts in evidence. A 'reasonable doubt,' at a minimum, is one based upon 'reason.' Yet a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt, and the same may be said of a trial judge sitting as jury. In a federal trial, such an occurrence has traditionally been deemed to require reversal of the conviction. Under *Winship,* which established proof beyond a reasonable doubt as an essential of Fourteenth Amendment due process, it follows that when such a conviction occurs in a state trial, it cannot constitutionally stand." (Citations omitted.) *Jackson, supra,* pp 316-318.

In rejecting the any evidence test, the Court focused on the differences between the concepts of relevancy and sufficiency of the evidence. Under MRE 402, all relevant evidence is admissible unless otherwise excluded. Relevant evidence is defined as evidence having any tendency to make the existence of any fact that is of consequence more probable or less probable than it would be without the evidence, MRE 401. The test of relevancy is designed to determine whether a single piece of evidence is of such significant import that it warrants being considered in a case. The standards for admissibility are designed to permit the introduction of all relevant evidence, not otherwise excluded, on the theory that it is best to have as much useful information as possible in making these types of decisions, *Turnbull v Richardson,* 69 Mich 400, 416; 37 NW 499 (1888).

The concept of sufficiency, on the other hand, is designed to determine whether all the evidence, considered as a whole, justifies submitting the case to the trier of fact or requires a judgment as a matter of law. This is in contrast to the standards

for relevancy which usually focus on one particular piece of evidence. The fact that some evidence is introduced does not necessarily mean that the evidence is sufficient to raise a jury issue. Because there is no requirement that the evidence be sufficient to support a conviction to be admissible, it does not necessarily follow that merely because some evidence is admitted, the evidence is sufficient to raise a jury issue. In quantitative terms, the fact that a piece of evidence has some tendency to make the existence of a fact more probable, or less probable, does not necessarily mean that the evidence would justify a reasonable juror in reasonably concluding the existence of that fact beyond a reasonable doubt.

Due process requires that the prosecutor introduce sufficient evidence which could justify a trier of fact in reasonably concluding that defendant is guilty beyond a reasonable doubt before a defendant can be convicted of a criminal offense, see, *Jackson, supra.* If sufficient evidence is not introduced, a directed verdict or judgment of acquittal should be entered. The statements in *Johnson, supra; Abernathy, supra; Eaton, supra,* to the effect that a trial judge should direct a verdict only where there is no evidence on a material element of the offense are specifically disapproved.

In summary, the trial judge when ruling on a motion for a directed verdict of acquittal must consider the evidence presented by the prosecution up to the time the motion is made, *Garcia, supra,* view that evidence in a light most favorable to the prosecution, *People v Vail,* 393 Mich 460, 463; 227 NW2d 535 (1975), and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt, *Jackson, supra,* p 319.

## II

However, the standards governing directed verdicts do not require that the jury's verdict of guilty be reinstated. From the facts as they have evolved, we find that the trial judge did not direct a verdict of acquittal. He set aside the jury's verdict and ordered a new trial. Although this ruling was made following arguments on defendant's motion for a directed verdict, the judge actually ordered a new trial and did not direct a verdict.[3] The trial judge's order provided:

"Defendant having moved for a directed verdict at the close of the prosecution's proofs, and that motion having been denied, the court ruling that the prosecution had presented some evidence on all the elements of the offense; and that motion having been renewed at the close of all proofs, and decision reserved by the court until after return of the verdict, and the jury having returned verdicts of guilty of second-degree murder against defendant; this court hereby finds that the evidence presented was not sufficient to convince a reasonable person beyond a reasonable doubt of defendant's guilt, consequently:

"IT IS ORDERED that the jury verdicts *as to Defendant Hampton* [handwritten by Judge Crockett] be set aside, ~~defendant's renewed motion for a directed verdict is~~

---

[3] At oral arguments, the prosecutor claimed that *Burks v United States,* 437 US 1; 98 S Ct 2141; 57 L Ed 2d 1 (1978), held that it was a violation of double jeopardy to order a new trial after setting aside a jury's verdict of guilty as being against the great weight of the evidence. Traditionally, the granting of a new trial on this basis with the defendant's consent was not viewed as violating double jeopardy, see *People v Fochtman,* 226 Mich 53; 197 NW 166 (1924), 21 Am Jur 2d, Criminal Law, § 209, p 253. The holding in *Burks, supra,* does not directly apply to or resolve this issue because it concerned the ordering of a new trial after a directed verdict of acquittal. In fact, the question of whether the ordering of a new trial on the basis that the verdict was against the great weight of the evidence violates double jeopardy was specifically left unresolved in *Greene v Massey,* 437 US 19, 26, fn 10; 98 S Ct 2151; 57 L Ed 2d 15 (1978), decided the same day as *Burks, supra.*

~~GRANTED~~, and a new trial is ordered." (Cancellations
made by hand in original.)

The statements in the two paragraphs of the
order are ambiguous and even confusing in light of
the judge's oral explanatory statements. We do not
interpret the order as representing a conclusion by
the trial judge that a verdict of acquittal was
required as a matter of law, even under the *Jack-
son* standards. The testimony, arguments of coun-
sel and statements by the trial judge preceding the
rulings on these issues clearly indicate that when
ruling on these motions, the trial judge did not
consider the prosecution's evidence in its best
light, considered evidence offered by the defense
and may have permitted an inaccurate view of the
possible punishment to affect his decision.[4] Because

[4] During the arguments on the motion made at the close of all the
proofs, the following discussion occurred:

"*The Court:* The only basis on which you can get a conviction
against the defendant Hampton is on the theory that he aided and
abetted in the commission of this homicide. And as I recall the proofs,
I'm inclined to think that you are dependent almost entirely on that
evidence as to whether he was the one who pressed the release in the
Buick that opened the trunk. I think everything else that you claim
he did lends itself to the conclusion that it was not done voluntarily,
that it was done under maybe two or three different species of
compulsion. One, for his own protection dealing with a person consid-
erably his senior, a former Marine, who had regaled him time and
time again about his exploits, and who during all of this period of
time is with Mr. Hampton's knowledge armed with a sawed-off
shotgun. And secondly, for the safety of his sister, who seemed to be
dumb enough to cultivate that kind of friendship and posed the
danger for her younger brother. And third, his own immaturity.

"Now I am wondering if that sort of summary of the evidence with
respect to him isn't enough to warrant the conclusion that no reason-
able person could conclude beyond a reasonable doubt that he is
guilty.

"*[Prosecutor]:* I would think that's not the case, your Honor. There
are a chain of events here which would lead or should be able to lead
a jury to reasonably find that he is guilty. The only element of
compulsion that was ever testified to was that the defendant Mr.
Griffin somehow touched his gun at the time when he first picked up
the car and told the defendant Mr. Hampton to get in.

"*The Court:* Well, you don't mean the only element of compulsion.
You might mean the only overt threatening act.

"*[Prosecutor]:* Yes.

"*The Court:* All right. That's different from an element of compulsion.

"*[Prosecutor]:* The only overt threatening act was that. After that time there was ample opportunity for Mr. Hampton to disassociate himself with the chain of events that led to Mr. Coleman's death. He in fact was present during the time when Mr. Coleman was being bound and gagged. There is some evidence, at least the way I look at the evidence, to indicate that Mr. Griffin could not have bound and gagged and retained possession of the shotgun in the home.

"There is an opportunity of Mr.—that Mr. Hampton had to reveal his predicament at the time when he got out of the car, went to the gas station, obtained some gas. There was another opportunity for him to disassociate himself with the chain of events when he returned the gas can. He didn't make any of those efforts.

"*The Court:* Now during all of this time he is operating under circumstances where his sister is in the presence of his codefendant, who has a sawed-off shotgun.

"*[Prosecutor]:* But there is no evidence whatsoever, your Honor, that Mr. Griffin's presence with the sister was threatening at all to the sister. There was no threats made to the sister. She apparently went along with this thing voluntarily. She didn't testify that Mr. Griffin made her do anything at all.

"*The Court:* Wasn't there some testimony to the effect that Mr. Hampton initially was reluctant or refused to get in the car when they were leaving the house and his sister, according to his testimony, indicated to him that he had better comply? Don't you remember that testimony?

"*[Prosecutor]:* Once again, your Honor, that's Mr. Hampton's testimony. It's not—it's not—it's not his sister's testimony at all. There was ample opportunity for defense to bring that out. It never came out. There is no evidence whatsoever that his sister felt—felt threatened or that anyone felt threatened at any time except for that one instance when, if you believe Mr. Hampton, Mr. Griffin made a threatening gesture when he first obtained the car. That is the only evidence that any threats or any type of duress was used at all towards Mr. Hampton."

After the verdict was returned, defendant requested a ruling on his motion and the following discussion took place:

"*[Prosecutor]:* Secondly, I think that we have a jury to decide these matters. I don't believe that we can review their findings. I think that there was sufficient evidence that—

"*The Court:* What do you mean—you said you don't think we can review their findings?

"*[Prosecutor]:* I think that—I think—

"*The Court:* Don't you always do that on a motion to set aside the jury's verdict and grant a new trial?

\*    \*    \*

"*The Court:* The whole theory of the prosecution, as I indicated before, in prosecuting Hampton was that he voluntarily aided and

the trial judge weighed the evidence presented by both the prosecutor and defendant, we conclude that his findings and order are more consistent with the ordering of a new trial than with the direction of a verdict of acquittal.

The standards governing the grant or denial of a motion for a new trial are different from those for a directed verdict. MCL 770.1; MSA 28.1098, provides:

"The court in which the trial of any indictment shall be had may grant a new trial to the defendant, for any cause for which by law a new trial may be granted, or

---

abetted in this killing and also in the robbery. I indicated earlier when the motion was made at the close of all of the proofs for a directed verdict, that in my judgment the only act, assuming that the evidence established that act, on which the prosecution could rely to show aiding and abetting, was the contention that Mr. Hampton was the one who pressed the release that caused the back trunk to open to permit Mr. Griffin to take out the body.

"Mr. Hampton denied that he did that. The prosecution's star witness, Mr. Griffin's sister, who was sitting right on the front seat, denied that he did it, and testified that Mr. Griffin himself was—I didn't mean to say Mr. Griffin's sister; Mr. Hampton's sister. And she testified that Mr. Griffin himself was the one that came back into the front of the car, pressed the release to open the trunk.

"The prosecution relies on the testimony of Mr. Griffin's sister. But her testimony, as I recall it, is pretty clear to the effect that she not only was overly excited, she was frightened, she was down on the floor of the car behind the seat. And her only basis for concluding that Mr. Hampton was the one who pressed the release was that she believes he leaned over the back seat."

A prior inconsistent statement in which Ms. Griffin stated that Mr. Hampton pressed the release button that opened the trunk was introduced to impeach her testimony that she did not see Mr. Hampton press the button.

"Now whether he leaned over the back seat to press the release or whether he leaned over the back seat for any other reason or whether in fact he leaned over the back seat, does not come through with as much clarity as I think the law requires if you are going to send a man away under a mandatory sentence of life imprisonment.

"I am not satisfied that justice was done in this case. I am not satisfied that the jury followed the court's instructions. I am not satisfied that the prosecution's evidence was sufficient to convince a reasonable person beyond a reasonable doubt that Mr. Hampton is guilty. The jury's verdict is set aside. A new trial is ordered in the case of Mr. Hampton."

when it shall appear to the court that justice has not been done, and on such terms or conditions as the court shall direct."

Under this statute, a new trial may be granted if the trial judge finds that the guilty verdict was not in accordance with the evidence introduced and that an injustice has been done. *People v Henssler,* 48 Mich 49, 51; 11 NW 804 (1882), *People v Rayford Johnson,* 391 Mich 834; 218 NW2d 378 (1974). See, also, GCR 1963, 527.1(5). The decision whether to grant or deny a motion for a new trial is entrusted to the discretion of the trial court and that decision will not be disturbed on appeal without a showing of an abuse of discretion, *People v Andrews,* 360 Mich 572; 104 NW2d 199 (1960), *People v Lowenstein,* 309 Mich 94; 14 NW2d 794 (1944).

Even the defendant, who argued that this Court should adopt a directed verdict standard similar to the one required by *Jackson,* concludes that the trial judge's findings and order were consistent with the standards governing the ordering of new trials. In his brief, it is argued that:

"Here, the record shows that the trial judge in passing upon defendant-appellee's motion gave full pay *[sic, play?]*·to the right of the jury to determine credibility, draw inferences of fact, and determine whether a reasonable mind might fairly conclude guilt beyond a reasonable doubt. The trial judge determined upon the evidence that a reasonable mind might have a reasonable doubt as to the guilt of the defendant-appellee and so set the verdict aside and ordered a new trial. In doing so he was not required to apply the standards required had he acquitted the defendant-appellee.

\* \* \*

"Wherefore, appellee respectfully requests that the

order of the trial judge vacating the defendant's conviction be upheld and a new trial ordered."

For these reasons and because defendant has not appealed or requested a review of this order, we would decline to reverse the order for a new trial and to order that a directed verdict of acquittal be entered.

A review of the record in this case does not show that the trial judge abused his discretion in granting a new trial or that his actions impermissibly invaded the province of the jury.[5]

Affirmed.

FITZGERALD, J., concurred with COLEMAN, C.J.

LEVIN, J. *(concurring)*. The trial judge's statements explaining his decision to grant the defendant post-verdict relief do not, as a matter of Michigan procedural law, change the nature of the order which he entered—as a matter of Michigan law he ordered a new trial and did not direct a verdict.[1]

I agree with my colleagues that a trial judge is authorized, although there is, prima facie, sufficient evidence to present a question for the jury, to grant a new trial "for any cause for which by law

[5] "There is no incongruity or inconsistency in requiring the Court to submit the issues to the jury if there is substantial evidence to support a verdict of guilty, and at the same time in empowering it to set the verdict aside if it is deemed contrary to the weight of evidence. In directing a judgment of acquittal, the Court makes a final disposition of the case. On the other hand, in setting the verdict aside the Court merely grants a new trial and submits the issues for determination by another jury. It is appropriate that in the latter instance, the Court should have wide discretion in the interest of justice." (Footnote omitted.) *United States v Robinson,* 71 F Supp 9, 11 (D DC, 1947).

[1] Courts speak through their judgments and orders, not their oral statements or written opinions. *Tiedman v Tiedman,* 400 Mich 571, 576; 255 NW2d 632 (1977).

a new trial may be granted, or when it shall appear to the court that justice has not been done", MCL 770.1; MSA 28.1098. Unless such authority is abused,[2] an order granting a new trial because the judge regards the verdict as contrary to the great weight of the evidence[3] or not in accord with a just result does not invade the province of the jury.

I agree with the Chief Justice that the judge did not in this case abuse his discretion in granting a new trial. In so concluding, I have considered the judge's statements before entry of the order which, although not material in deciding what he did, are pertinent in deciding whether what he did was justified.

I cannot sign the Chief Justice's opinion, however, because there is no need to consider the standard for directing a verdict in a case where, as a matter of Michigan procedural law, no verdict was directed. For the same reason I cannot sign Justice RYAN's opinion.

Although, as appears from Justice RYAN's opinion, Hampton may have a substantial double jeopardy claim,[4] it is not before us. This appeal was brought by the prosecutor. The only issue on which leave was granted was "whether * * * the trial court invaded the province of the jury when he granted the defendant's motion for directed

---

[2] See *People v Nick,* 360 Mich 219, 224; 103 NW2d 435 (1960).

[3] See GCR 1963, 527.1(5).

[4] In *Burks v United States,* 437 US 1; 98 S Ct 2141; 57 L Ed 2d 1 (1978), the United States Supreme Court held that the Double Jeopardy Clause precludes a second trial following a reviewing court's reversal of a defendant's conviction in a prior trial solely for lack of sufficient evidence to sustain the jury's verdict. A companion case, *Greene v Massey,* 437 US 19, 24; 98 S Ct 2151; 57 L Ed 2d 15 (1978), declared that the *Burks* standard applied to state proceedings as part of the constitutional prohibition against double jeopardy. See *Benton v Maryland,* 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969).

verdict after the jury had returned a verdict finding the defendant guilty".

It now appears that the judge did not direct a verdict, but simply ordered a new trial, and that the case should be disposed of on that basis. Our misapprehension of the issue when we granted leave to appeal does not expand the scope of the grant to an issue not necessarily implicated by the limited grant of leave to appeal. No double jeopardy issue was raised by the prosecutor.[5] Nor was such an issue raised by Hampton, who did not seek leave to cross appeal and has made no argument in that regard. It is therefore inappropriate, without briefing or argument, to reach a double jeopardy issue. Similarly, since Hampton did not seek leave to cross appeal the implicit denial of his motion for directed verdict and has made no argument that the judge erred in failing to direct a verdict, we cannot properly decide whether Hampton is entitled to affirmative relief on the ground that the failure to direct a verdict was error.

Although the judge did not, as a matter of Michigan procedural law, direct a verdict, he may have done so, as Justice Ryan writes, as a matter of Federal double jeopardy law. This is still another reason why I cannot sign the Chief Justice's opinion as some of her observations may be read as bearing on whether the judge directed a verdict as a matter of Federal double jeopardy law.

---

[5] The prosecutor's brief adverted to several double jeopardy decisions of the United States Supreme Court, but only to argue that *United States v Martin Linen Supply Co,* 430 US 564, 570; 97 S Ct 1349; 51 L Ed 2d 642 (1977), was distinguishable and the trial judge's ruling *was appealable* because a successful appeal would result in reinstatement of the guilty verdict rather than a further trial or proceeding "devoted to the resolution of factual issues going to the elements of the offense charged". Therefore, the prosecutor's brief did not anticipate that we might find a retrial constitutionally forbidden. The disposition which we believe to be correct makes it unnecessary to consider whether, if the judge had directed a verdict, it would be appealable consistent with the Double Jeopardy Clause.

I would affirm the Court of Appeals, remanding for a new trial without prejudice to Hampton raising a double jeopardy issue.

WILLIAMS, J., concurred with LEVIN, J.

RYAN, J. *(concurring in part; dissenting in part).* We are asked the specific question:

"Whether, under the circumstances of this case, the trial court invaded the province of the jury when he granted the defendant's motion for directed verdict after the jury had returned a verdict finding the defendant guilty."[1]

The Chief Justice recognizes that in order to answer this question we must first determine the correct standard to be utilized by a trial court in ruling upon a motion for a directed verdict in criminal cases. We agree with the standard she adopts but do not agree that a new trial may be ordered in the instant case.

We recognize that our case law has failed in the past to clearly articulate the standard trial judges are to apply in ruling on motions for directed verdict in criminal cases.[2] Moreover, we are per-

[1] 402 Mich 828, 829 (1977). This appeal was brought by the prosecutor on the belief that the trial judge had granted the defendant's reserved motion for directed verdict, but had done so pursuant to an incorrect standard. See, *infra,* fns 2, 3.

[2] See, for example, *People v Minney,* 155 Mich 534; 119 NW 918 (1909), and *People v Abernathy,* 253 Mich 583; 235 NW 261 (1931).

In passing upon a motion for directed verdict in *Minney,* the trial court denied the motion, saying:

"The case may be very weak, indeed the evidence may be entirely insufficient upon which to base a conviction, and yet it does not follow that the court should direct a verdict for the defendant."

The Supreme Court specifically disapproved of this statement, saying:

"[T]he statement of the court that it should not direct a verdict when the evidence is entirely insufficient upon which to base a

suaded, as is the Chief Justice, that the rationale of *Jackson v Virginia,* 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979), supports our adoption of the following standard to be utilized by trial courts in ruling upon these motions: Whether the evidence presented by the prosecution, viewed in the light most favorable to it, is sufficient evidence from which a rational trier of fact could find guilt beyond a reasonable doubt of each of the essential elements of the crime.

However, after adopting this standard, the Chief Justice determines it does not require reversal on the facts of this case. Her conclusion is based on a finding that the trial judge in this case did not direct a verdict, but instead exercised his discretion to order a new trial on the ground that the verdict was against the great weight of the evidence.

We disagree. As the Chief Justice's opinion accurately reports, the defendant made separate motions for directed verdict of acquittal at the conclusion of the prosecution's case and again at the conclusion of all of the proofs. The trial judge denied the first motion, and reserved his ruling on the second. No motion was made or argued for a new trial, and it is undoubted that none is neces-

conviction is not correct. If upon the conceded and undisputed facts there is no ground to sustain a verdict of guilty, the court should direct a verdict. The question then becomes one of law for the court." 155 Mich 536-537.

The *Abernathy* Court, in language of which we specifically disapprove today, said:

"The question of the sufficiency of the evidence is one for the jury unless there is no evidence at all upon a material point." 253 Mich 587.

That Court may have adopted this rule as the negative correlative to the rule that if there is no evidence on an element of the offense the trial court must direct a verdict. However, it does not necessarily nor logically follow from this latter rule that if there is some evidence on every element of the offense the trial court may not direct a verdict.

sary to confer on the trial judge, in an appropriate case, the power to order a new trial. GCR 1963, 527.4. Nonetheless, the trial judge in this case could not properly reach the issue of whether a new trial should be ordered, pursuant to GCR 1963, 527.1(5), unless and until he first resolved the defendant's pending motion for directed verdict, which sought to test the legal sufficiency of the prosecution's proofs to establish a jury-submissible case. Therefore, it was necessary that, before the trial judge could properly *sua sponte* order a new trial on the ground contended, he must first have resolved the defendant's pending motion for directed verdict *against* the defendant. Stated otherwise, even assuming *arguendo* that the trial judge's order for a new trial was based on his determination that the jury's verdict was against the great weight of the evidence, he was required to have first determined that the prosecution had presented evidence legally sufficient to establish a jury-submissible case. That determination equally required denial of defendant's then pending motion for directed verdict of acquittal.

Thus, while the trial judge's written order purports, in its modified form, to deal only with the matter of a new trial, it has the inescapable effect of working a denial of the defendant's otherwise unresolved motion for directed verdict. The basic issue thereby emerges: Whether the trial judge erred in his resolution of the defendant's motion(s) for directed verdict of acquittal?

As the Chief Justice correctly states: "Due process requires that the prosecutor introduce sufficient evidence which could justify a trier of fact in reasonably concluding that defendant is guilty beyond a reasonable doubt before a defendant can be convicted of a criminal offense, see *Jackson,*

*supra.* If sufficient evidence is not introduced, a directed verdict or judgment of acquittal should be entered". COLEMAN, C.J., p 368.

In a case where the prosecution does not introduce sufficient evidence which could justify a trier of fact in reasonably concluding that defendant is guilty beyond a reasonable doubt, the error committed is in the trial court's failure to grant a defendant's motion for a directed verdict of acquittal and enter judgment thereon, an error which cannot be remedied by ordering a new trial.

Certainly a trial court has the discretion to order a new trial after a guilty verdict has been returned when the court finds that verdict is against the great weight of the evidence. GCR 1963, 527.1(5). See *People v Henssler,* 48 Mich 49, 51; 11 NW 804 (1882), where the Court said, in pertinent part:

> "The weight to be given the testimony, where conflicting, should be left to the jury. If at a subsequent time the trial court is of opinion that the verdict was not in accordance with the evidence introduced and that injustice has been done thereby, full power is possessed by the court to correct the error or mistake of the jury by granting a new trial."

Similarly, in *People v Johnson,* 397 Mich 686, 687; 246 NW2d 836 (1976), where the trial court set aside a guilty verdict and ordered a new trial because it disbelieved the prosecution witnesses, we upheld its power to do so while holding that the same court could not dismiss the charges against the defendant because there was sufficient evidence produced to support a conviction. The trial court had found, in effect, that the verdict was against the great weight of the evidence; consequently, it had the discretion to order a new

trial and to allow a second jury the opportunity to evaluate the credibility of the prosecution witnesses. However, since the prosecution's evidence, viewed most favorably to the prosecution, was sufficient to sustain a verdict of guilty beyond a reasonable doubt, the trial court had no power to dismiss the charges before the second trial.[3]

We do not think the trial judge made, or could properly have made, a finding that the verdict was against the great weight of the evidence in the case before us. Instead, we find that the trial judge, after applying a standard consistent with the one we announce today, directed a verdict of acquittal.

Careful examination of the transcript of the colloquies between the court and both trial counsel which occurred at the close of all the evidence and again immediately following the jury verdict, suggests that while the trial judge may have been unsure what label to assign the relief being requested of him, he clearly understood that the issue presented concerned the sufficiency of the evidence to support a guilty verdict.

After all the evidence was in and before closing arguments to the jury, the following occurred:

"*The Court:* Anything further, gentlemen:

"*[Defense Counsel]:* Your Honor, I should just like to renew my motion again to the court on a dismissal as to Mr. Hampton, just briefly.

"Your Honor, at this time I would renew my motion as to both counts as to Mr. Hampton. And I think that now the court has before it all the testimony of the witnesses, and I believe that the testimony of the

---

[3] We agree with the Chief Justice that the statement in *Johnson,* as well as similar statements in *People v Eaton,* 59 Mich 559; 26 NW 702 (1886), and *Abernathy, supra,* to the effect that a trial judge should direct a verdict only when there is no evidence on a material element of the offense, are specifically disapproved.

witnesses at this particular juncture, your Honor, reveals no evidence whatsoever that a homicide was committed pursuant to any plan, advice, or suggestion of the defendant Mr. Wayne Hampton; but in fact reveals that the homicide was a spontaneous act on the part of the defendant Lewis Griffin, who had told everyone else at the scene that the deceased would not be harmed.

"And further, your Honor, I should like to state that the testimony also indicates that the murder itself was too separated in time and action from the robbery to be considered for a felony-murder charge as to Wayne Hampton.

"And the testimony further shows, your Honor, that Wayne Hampton was merely present at the scene of the murder, and his position is no different from that of the other witnesses in the automobile.

"So as to both counts here, your Honor, I don't think the people have sustained a prima facie case as to Mr. Wayne Hampton. I think all the testimony is diametrically opposed, uncontradicted, as to Mr. Hampton, and I would renew my motion again for the court. That is a legal question here, and that the court should on its own motion dismiss Mr. Hampton from this particular case without it going to the jury.

"*The Court:* Do you wish to be heard, Mr. [Prosecutor]?

"*[Prosecutor]:* Well, your Honor, I would merely repeat the argument that I have made on a previous occasion at the end of my proofs. I would rest on that argument. I don't think there has been any indication, any evidence, which could negate the elements of my argument. Perhaps there is an additional element for the jury to consider, but that's a jury question.

"*The Court:* The only basis on which you can get a conviction against the defendant Hampton is on the theory that he aided and abetted in the commission of this homicide. And as I recall the proofs, I'm inclined to think that you are dependent almost entirely on that evidence as to whether he was the one who pressed the release in the Buick that opened the trunk. I think everything else that you claim he did lends itself to the

conclusion that it was not done voluntarily, that it was done under maybe two or three different species of compulsion. One, for his own protection dealing with a person considerably his senior, a former Marine, who had regaled him time and time again about his exploits, and who during all of this period of time is with Mr. Hampton's knowledge armed with a sawed-off shotgun. And secondly, for the safety of his sister, who seemed to be dumb enough to cultivate that kind of friendship and posed the danger for her younger brother. And third, his own immaturity.

"Now I am wondering if that sort of summary of the evidence with respect to him isn't enough to warrant the conclusion *that no reasonable person could conclude beyond a reasonable doubt that he is guilty."* (Emphasis added.)

There ensued a long colloquy between the court and the assistant prosecuting attorney, including a recitation by defense counsel of his reason for asking that the court "dismiss Mr. Hampton" which he concluded by stating:

"And I feel there has not been substantial evidence or testimony in this case to find this man guilty of anything, and I don't think it is a case to go to the jury. I really don't, and I think the court on its own motion should dismiss Mr. Hampton. I don't believe this is a case at all to go to the jury."

The trial judge then asked:

"*The Court:* Do I have to decide this motion now, or can I let it go to the jury and reserve my decision?

"*[Defense Counsel]:* Well, if you want—

"*The Court:* Mr. Prosecutor?

"*[Prosecutor]:* I think you can reserve your decision.

"*The Court:* I think that's what I'll do. Anything further?

"*[Defense Counsel]:* No, your Honor."

After the jury returned a verdict of guilty of second-degree murder against Mr. Hampton, defense counsel asked for a ruling on his earlier motion which the trial judge had "reserved". After a brief reply by the assistant prosecuting attorney the court ruled as follows:

"*The Court:* The whole theory of the prosecution, as I indicated before, in prosecuting Hampton was that he voluntarily aided and abetted in this killing and also in the robbery. I indicated earlier when the motion was made at the close of all of the proofs for a directed verdict, that in my judgment the only act, assuming that the evidence established that act, on which the prosecution could rely to show aiding and abetting, was the contention that Mr. Hampton was the one who pressed the release that caused the back trunk to open to permit Mr. Griffin to take out the body.

"Mr. Hampton denied that he did that. The prosecution's star witness, Mr. Griffin's sister, who was sitting right on the front seat, denied that he did it, and testified that Mr. Griffin himself was—I didn't mean to say Mr. Griffin's sister; Mr. Hampton's sister. And she testified that Mr. Griffin himself was the one that came back into the front of the car, pressed the release to open the trunk.

"The prosecution relies on the testimony of Mr. Griffin's sister. But her testimony, as I recall it, is pretty clear to the effect that she not only was overly excited, she was frightened, she was down on the floor of the car behind the seat. And her only basis for concluding that Mr. Hampton was the one who pressed the release was that she believes he leaned over the back seat.

"Now whether he leaned over the back seat to press the release or whether he leaned over the back seat for any other reason or whether in fact he leaned over the back seat, does not come through with as much clarity as I think the law requires if you are going to send a man away under a mandatory sentence of life imprisonment.

"I am not satisfied that justice was done in this case. I am not satisfied that the jury followed the Court's instructions. *I am not satisfied that the prosecution's evidence was sufficient to convince a reasonable person beyond a reasonable doubt that Mr. Hampton is guilty.* The jury's verdict is set aside. A new trial is ordered in the case of Mr. Hampton." (Emphasis added.)

Having once wondered on the record "if that sort of summary of the evidence with respect to [Hampton] isn't enough to warrant the conclusion that no reasonable person could conclude beyond a reasonable doubt that he is guilty" and having later declared that he was "not satisfied that the prosecution's evidence was sufficient to convince a reasonable person beyond a reasonable doubt that Mr. Hampton is guilty", the court can only be understood to have set aside the verdict on the basis that, as a matter of law, there was insufficient evidence to sustain the jury verdict of guilty beyond a reasonable doubt.

If there was any question about that, it was laid to rest when the court's written order was entered which recited:

"[T]his court hereby finds that the evidence presented was not sufficient to convince a reasonable person beyond a reasonable doubt of defendant's guilt * * *."

The question then is whether it was error for the court, having set aside the verdict for insufficient evidence, to order a new trial. We hold that it was.

The United States Supreme Court has held that the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution precludes a second trial when conviction in the first trial was reversed by the reviewing court solely for lack of

sufficient evidence to sustain the jury's verdict, even though the defendant specifically requested a new trial. *Burks v United States,* 437 US 1, 18; 98 S Ct 2141; 57 L Ed 2d 1 (1978).

In *Greene v Massey,* 437 US 19, 25; 98 S Ct 2151; 57 L Ed 2d 15 (1978), decided the same day as *Burks,* the Court said the same result would obtain upon comparable facts following a state court conviction.

There is no justification for reaching a contrary result because a trial judge, rather than a reviewing court, has determined as a matter of law that the prosecution's proofs are insufficient to support a finding of guilt beyond a reasonable doubt. Having found that the evidence, viewed most favorably toward the prosecution, was legally insufficient to support a finding of guilt beyond a reasonable doubt, the trial court was compelled to enter a judgment of acquittal and was thus precluded from granting defendant a new trial.[4]

Upon our own painstaking examination of the record in this case, conducted in conformance with the constitutionally binding standard announced in *Jackson v Virginia, supra,* we conclude that the trial court did not err in finding that the evidence

---

[4] Where the prosecution fails to introduce sufficient evidence on each essential element of the crime which could justify a trier of fact in reasonably concluding that the defendant is guilty beyond a reasonable doubt, due process *requires* the entry of a judgment of acquittal, and the trial judge clearly has no discretion to do otherwise.

Where the prosecution does introduce sufficient evidence on each essential element of the crime which could justify a trier of fact in reasonably concluding that the defendant is guilty beyond a reasonable doubt, but such technically sufficient evidence is greatly overwhelmed by contrary evidence, the trial judge has discretion to set aside a jury verdict of guilty and order retrial of the case before another fact-finder.

In the former instance, the judge is required to make a purely legal determination; while in the latter the judge is empowered, not to substitute his factual judgment for the jury's, but to substitute another fact-finder for the original one.

produced by the prosecutor was legally insufficient to support a finding of guilt beyond a reasonable doubt.[5]

The trial court's order setting aside the jury verdict against defendant should be affirmed, the order granting a new trial should be vacated, and a judgment of acquittal should be entered.

KAVANAGH and BLAIR MOODY, JR., JJ., concurred with RYAN, J.

---

[5] We note that double jeopardy considerations do not preclude our review of the trial court's post-verdict legal determination that the prosecution's evidence was insufficient to support a finding of guilt beyond a reasonable doubt. A reversal of that ruling would not require the defendant to "run the gauntlet" of a new trial but would merely result in the reinstatement of the jury's guilty verdict. See *United States v Wilson,* 420 US 332, 352-353; 95 S Ct 1013; 43 L Ed 2d 232 (1975).