*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CARLA KAY COLE,

        Defendant-Appellant.

UNPUBLISHED
August 26, 2021

No. 350891
Washtenaw Circuit Court
LC No. 18-000830-FC

Before: SAWYER, P.J., and STEPHENS and RICK, JJ.

PER CURIAM.

Defendant, Carla Kay Cole, appeals by right her jury conviction of first-degree murder (premeditated), MCL 750.316(1)(a); and assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84.[1] The trial court sentenced defendant to serve life imprisonment for first-degree murder and 38 months to 10 years' imprisonment for AWIGBH. Defendant argues that there was insufficient evidence to support the premeditation element required for first-degree murder. Defendant further argues that she was denied effective assistance of counsel when her trial counsel failed to present a self-defense argument, denied defendant her constitutional right to testify, and failed to obtain an expert witness on post-traumatic stress disorder. We affirm.

This appeal arises from the stabbing death of the victim, Crystal Ludwig, that occurred shortly after midnight on June 19, 2018. Louis Burbanks, the victim's boyfriend, was a long-time friend of Dana Barnes, who was defendant's boyfriend. Barnes contacted the victim and invited him out for drinks. Barnes and defendant picked up Burbanks and the victim from their hotel. Various conflicts took place over the evening between Burbanks and the victim, and between defendant and the victim. After leaving the bar, a conflict ensued in defendant's car, resulting in the victim being stabbed several times. The victim died from the injuries she sustained in the stabbing.

---

[1] The jury found defendant not guilty of assault with a dangerous weapon, MCL 750.82; and assault with intent to murder, MCL 750.83.

# I. SUFFICIENCY OF EVIDENCE

Defendant's first-degree murder conviction was supported by sufficient evidence of premeditation and deliberation.

Challenges to the sufficiency of the evidence are reviewed de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "We view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id*. "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

As a threshold matter, defendant argues that the trial court erred by denying her motion for a directed verdict on the first-degree murder charge because the prosecution did not present sufficient evidence to support premeditation and deliberation.

> A trial court assesses the merits of a directed verdict motion through consideration of the evidence presented by the prosecution *in a light most favorable to the prosecution*, to determine whether a rational trier of fact could find that the elements of a crime were proven beyond a reasonable doubt. [*People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993).]

The standards for evaluating the evidence in a motion for a directed verdict are the same as those involving a challenge to the sufficiency of the evidence. See *People v Hampton*, 407 Mich 354, 366-368; 285 NW2d 284 (1979).

Due process requires a criminal conviction to be supported by sufficient evidence, and precludes irrational jury verdicts. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992), see also *Jackson v Virginia*, 443 US 307, 315; 99 S Ct 2781; 61 L Ed 2d 560 (1979).

> [W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. [*Wolfe*, 440 Mich at 515.]

Appellate courts must not interfere with the role of the jury. *Id*. at 514. " 'Juries, not appellate courts, see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony.' " *Id*. at 514-515, quoting *People v Palmer*, 392 Mich 370, 375-376; 220 NW2d 393 (1974). "The scope of review is the same whether the evidence is direct or circumstantial." *Nowack*, 462 Mich at 400. "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (quotation marks and citation omitted).

First-degree murder is "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MCL 750.316(1)(a). "The elements of first-

degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "Premeditation and deliberation may be established by an interval of time between the initial homicidal thought and the ultimate action, which would allow a reasonable person time to subject the nature of his or her action to a 'second look.' " *People v Oros*, 502 Mich 229, 242; 917 NW2d 559 (2018).

> The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide. [*People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995), distinguished on other grounds, *People v Elliott*, 295 Mich App 623; 815 NW2d 575 (2012).]

Application of the *Anderson* factors and the second-look requirement to these facts support an inference that the killing was premeditated and deliberate.

Although the defendant and the victim did not know each other before the night of the killing, the evidence indicates that defendant developed significant animosity toward the victim during their brief time together. Defendant accused the victim of making sexual advances toward her boyfriend. These accusations on the part of defendant are supported only by Burbanks's testimony. However, both Burbanks and Barnes testified that some kind of altercation took place in defendant's car between defendant and the victim as they were leaving the bar. This altercation is also seen on the surveillance video. Therefore, although defendant and the victim had no prior relationship before the night of the killing, defendant's actions before the killing are marked by increasing hostility toward the victim.

The evidence related to the circumstances of the killing establishes that defendant stopped the car after the victim pulled her hair. It is unclear how the altercation between the two moved from a verbal confrontation to a physical one, but the evidence supports that this did happen. Defendant stopped the car, and opened the rear driver's-side door of the car. Evidence was admitted that indicates that before exiting from the driver's seat, defendant pulled a knife from her purse: Barnes testified that defendant had previously told him that she carried a knife in her purse for protection. When defendant opened the rear driver's-side door, she cut Burbanks on the hand and stabbed the victim in the leg. Defendant then returned to the driver's seat momentarily, and then proceeded around to the passenger side of the car, and stabbed the victim one more time, this time in the chest. This was a fatal wound.

After stabbing the victim this final time, defendant returned to the driver's seat of her vehicle. Barnes returned to the passenger seat, and the two drove off, leaving the victim with Burbanks. Defendant did not call 911, or otherwise alert any authorities about what had happened. She returned home and engaged in an argument with Barnes over what had happened, eventually telling him to pack his belongings and leave her house. Defendant told Barnes, "I think I probably stabbed her."

Defendant was openly hostile toward the victim, leading to an escalating physical confrontation. During the ensuing melee, defendant paused in the driver's seat before getting out

again to fatally stab the victim. This pause gave defendant an opportunity to take a second look, regardless of how long the pause lasted. See *Oros*, 502 Mich at 242. This was the critical event. Even though the surveillance video shows that this time period was five seconds, it allowed defendant the opportunity to take a second look. Therefore, there is sufficient evidence to support an inference that defendant's killing of the victim was premeditated and deliberate. See *Oros*, 502 Mich at 242; *Anderson*, 209 Mich App at 537. How to weigh the witnesses' testimonies and the admitted evidence was a matter for the jury to decide. See *Palmer*, 392 Mich at 375-376.

In conclusion, because there was sufficient evidence that defendant's killing of the victim was premeditated and deliberate, the elements of first-degree murder were supported by sufficient evidence to both justify denying defendant's motion for a directed verdict and to support the jury's finding that defendant was guilty of first-degree murder beyond a reasonable doubt.

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises three separate arguments, claiming that defense counsel failed to provide effective representation. We disagree with all three arguments, as discussed in detail below.

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Although defendant has preserved the issue by filing a motion for remand in this Court, because we denied the motion and no evidentiary hearing has been held, review is limited to errors apparent on the lower court record. See *People v Abcumby-Blair*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347369, issued 12/22/2020); slip op at 8.

A criminal defendant has a constitutional right to the effective assistance of counsel. US Const, Am VI. A defendant who is denied this right is entitled to reversal of the conviction. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A claim of ineffective assistance of counsel has two components. First, the defendant must show that defense counsel's performance "fell below an objective standard of reasonableness." *Id*. at 688. Second, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id*. at 692; see *People v Pickens*, 446 Mich 298, 318; 521 NW2d 797 (1994). Counsel is not required to advance a meritless position. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## A.  SELF-DEFENSE

Because the evidence in this case does not support a finding that defendant acted in self-defense when she killed the victim, defense counsel's decision not to pursue a self-defense argument was not ineffective assistance of counsel.

> As a general rule, the killing of another person in self-defense by one who is free from fault is justifiable homicide if, under all the circumstances, he honestly and reasonably believes that he is in imminent danger of death or great bodily harm and that it is necessary for him to exercise deadly force. [*People v Riddle*, 467 Mich 116, 119; 649 NW2d 30 (2002) (citation omitted).]

"[T]he touchstone of *any* claim of self-defense, as a justification for homicide, is *necessity*." *Id.* at 127. In *Riddle*, our Supreme Court explained the situations in which the general principle of necessity does not apply. *Id.* at 129. Relevant to this case, there is no duty to retreat from a sudden, violent attack. *Id.* A violent and sudden attack removes the ability to retreat. *Id.* at 129-130.

Further, our Legislature has codified the circumstances in which a person may use deadly force in self-defense without having the duty to retreat. MCL 780.972(1)(a) reads as follows:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if . . . :

> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself . . . .

Defendant claims that her killing of the victim was in response to a sudden, violent attack, and was, therefore, justifiable as self-defense. Defendant's claim is not supported by the evidence. Defendant and the victim had only met the night of the killing. They were arguing at the bar. According to Burbanks's testimony, as they left, defendant accused the victim of making sexual advances toward her boyfriend. The argument continued in the car as they were leaving, and the victim pulled defendant's hair as she was driving. At that point, defendant stopped the car.

After she stopped the car, defendant was able to disengage from the victim's hair pulling, which is evident from the fact that defendant got out of the car. At that point, it could be argued that the victim presented no danger to defendant. They were separated, and there were two other individuals present who could have helped to keep them separated. Defendant also had the option at this point to call someone else, like the police, for help. The victim posed no danger, and there is no indication in the record that the victim was armed.

Instead, defendant chose to open the back door of the car and stab the victim in the leg, also injuring Burbanks in the process. She then returned momentarily to the driver's seat. She then got out, walked around the car, and fatally stabbed the victim in the chest. These actions are not consistent with an argument of necessity because defendant had disengaged from the victim's attack and was no longer in harm's way. Whatever the nature of the attack that the victim was mounting, defendant had moved away, and it was not necessary to re-engage with the victim to defend herself.

Further, the victim's attack could not be fairly described as a sudden, fierce, and violent attack. The victim pulled defendant's hair when she was driving. Any possibility that this action could have caused death or great bodily harm to defendant ended when defendant stopped the car.

Defense counsel was faced with two imperfect defense strategies—either try to convince the jury that Burbanks was the person who stabbed the victim or present evidence to try to convince the jury that defendant acted in self-defense. The two choices are mutually exclusive; it would defy credibility to attempt to claim both. In formulating a strategy, defense counsel chose the alternative-killer option, apparently perceiving it to have the greatest chance of success. This was

-5-

a matter of trial strategy, and we cannot, with the benefit of hindsight, second-guess defense counsel's strategic choice. See *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012) ("We give defense counsel wide discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case.").

Even though defense counsel's choice of strategy was ultimately unsuccessful, defense counsel's choice was reasonable under the circumstances. Burbanks had a demonstrated history of domestic violence, including incidents involving the victim. They had been fighting on the night in question, and there was testimony that this included a physical altercation. Therefore, it was possible that doubt could have been raised with the jury that Burbanks was the person who killed the victim and not defendant. Given the choices available, defense counsel's decision to pursue this strategy, and abandon a self-defense strategy that was almost certain to fail in light of the evidence, did not fall below prevailing professional norms.

## B. RIGHT TO TESTIFY

Defendant was not denied effective assistance of counsel because of the strategic decision that she not testify at trial.

Defendant did not testify at trial. The trial court did not record an explicit waiver of the right to testify by defendant. During the presentence investigation, defendant provided a written statement: "I wanted to testify but my attorney did not allow it. I was not happy with my attorney that my family had selected. I was in jail 13 months due to all of the delays." At her sentencing hearing, defendant told the trial court "I wanted the chance to testify, to tell my side of the story." She also commented that she suffered from post-traumatic stress disorder (PTSD) and that this helped explain her actions. Defense counsel told the sentencing judge that counsel at trial had decided not to have her testify as a matter of trial strategy.

A criminal defendant has a constitutional right to testify in her own defense. *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). "Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *Id*. When a defendant "decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived." *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985) (quotation marks and citation omitted).

When defense counsel advises a defendant not to testify, a defendant must overcome the presumption that counsel's advice was sound trial strategy to prove ineffective assistance of counsel. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991). "[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which [this Court] will not second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (quotation marks and citation omitted).

In this case, defendant did not tell the court she wanted to testify during the trial and, therefore, waived that right. See *Simmons*, 140 Mich App at 685. Regardless, defendant has not shown that defense counsel's decision to keep her from testifying was unsound. As discussed earlier, defense counsel's strategy was based on a theory that defendant did not kill the victim, but

rather, that Burbanks did. Defendant's statement to the trial court at sentencing contains what could be read as an admission—that defendant reacted to being assaulted because of her PTSD condition. Regardless of whether defense counsel would have any success convincing a jury that defendant did not kill the victim, having her testify and subjecting her testimony to cross-examination would have risked her making a statement similar to the statement at sentencing during the trial. Therefore, defense counsel's representation and advice did not fall below an objective standard of reasonableness. See *Strickland*, 466 US at 488.

Defense counsel's decision not to call defendant to testify did not prejudice the outcome of the trial. Defendant's statement at sentencing indicated that she intended to make some variation of a self-defense argument, incorporating her PTSD condition. However, the evidence—particularly the surveillance video showing the parties' movements during the assault—does not support this argument as discussed earlier. Defendant also confirms in her brief that self-defense is the argument that she would have advanced. Therefore, preventing defendant from testifying on the basis of this theory did not prejudice the outcome of the trial. Defendant was not denied the effective assistance of counsel by counsel's advice that she not testify.

## C. FAILURE TO OBTAIN EXPERT WITNESS ON PTSD

Defendant argues that defense counsel's failure to call an expert witness on PTSD deprived her of a substantial defense and, therefore, constituted ineffective assistance of counsel. This argument lacks merit.

"An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy. A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (quotation marks and citations omitted). Defendant must offer proof "that an expert witness would have testified favorably if called by the defense." *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003).

Defendant claims that she was diagnosed with PTSD as a result of being assaulted in 1991. Defendant's claim that defense counsel was ineffective for failing to call an expert on PTSD is related to the claim that defense counsel was ineffective for failing to pursue the defense of self-defense discussed earlier.

> A claim of self-defense at common law required an honest and reasonable belief of an imminent danger of death or great bodily harm. The Self-Defense Act, MCL 780.971 *et seq*., . . . require[s] an honest and reasonable belief of imminent death or harm. MCL 780.972. A defendant's history and psychological makeup may be relevant to explain the reasonableness of a defendant's belief that he or she was in inescapable danger. And reasonableness depends on what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor. A defendant's psychological idiosyncrasies may, at least in theory, be relevant to the reasonableness of the defendant's belief that he or she was in danger. [*People v Orlewicz*, 293 Mich App 96, 102; 809 NW2d 194 (2011) (some citations omitted).]

Defendant cites *Orlewicz* to suggest that defendant's PTSD condition could explain her actions as a reasonable reaction to the victim's pulling of her hair. But defendant leaves out or misinterprets a critical portion of the quoted section of *Orlewicz*, "reasonableness depends on what an *ordinarily prudent and intelligent person* would do on the basis of the perceptions of the actor." *Id.* (emphasis added). An ordinarily prudent and intelligent person is unlikely to respond to hair pulling with a knife attack.

For the defense to bring a witness on PTSD would have amounted to an admission that defendant was the person who stabbed the victim. Such an admission was in direct conflict with defense counsel's trial strategy, which was to implicate Burbanks as the person who stabbed the victim. Therefore, calling an expert witness on PTSD would not only be irrelevant in light of defense counsel's chosen strategy, it would be detrimental to the defense. Further, defendant has not provided an offer of proof that an expert witness would have testified favorably regarding defendant's PTSD condition. See *Ackerman*, 257 Mich App at 455. For this reason, and because of the problems with the self-defense argument as stated earlier, defendant's argument that defense counsel was ineffective for failing to call a witness on PTSD lacks merit.

Affirmed.

/s/ David H. Sawyer
/s/ Cynthia Diane Stephens
/s/ Michelle M. Rick